Abdul DASHTO, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 94–2166.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1994.

Decided July 11, 1995.

Jules E. Coven, New York City, argued, for Abdul Dashto.

Samuel Der–Yeghiayan, I.N.S., James B. Burns, Office of the U.S. Atty., Chicago, IL, William J. Howard, Mark C. Walters, Teresa A. Wallbaum (argued), U.S. Dept. of Justice, Civ. Div., Immigration Lit., David J. Kline, Dept. of Justice, Office of Immigration Lit., Washington, DC, for I.N.S.

Before FLAUM, EASTERBROOK, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

After Abdul Dashto pled guilty to a series of robberies, the Immigration and Naturalization Service sought to have him deported to his native Syria. Based upon a clerk's certificate indicating that one of the robberies involved a handgun, the Board of Immigration Appeals found Dashto ineligible for discretionary relief from deportation under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c). The Board found, alternatively, that even if Dashto were eligible, a grant of relief would not be warranted. We conclude that the clerk's certificate in this case constituted insufficient evidence that Dashto had been convicted of a firearms offense, and that Dashto was therefore eligible for relief under section 212(c). However, we find no abuse of discretion in the Board's decision that Dashto did not warrant such relief. We likewise find no error in the Board's conclusion that Dashto did not merit adjustment of status pursuant to section 245(a) of the Act, 8 U.S.C. § 1255(a). We therefore deny Dashto's petition for review and affirm the order of deportation.

## I.

Dashto is a native and citizen of Syria. He was admitted to permanent residence in the United States along with his family in 1977 when he was nine years old and has lived here since that time.

Over a period of six to eight weeks in 1989, Dashto took part in a series of convenience store robberies. He was eventually arrested and indicted. In December 1991, he pled guilty in an Illinois court to three counts of robbery and three counts of armed robbery, each based on a separate incident in the 1989 robbery spree. Each of the armed robbery counts charged the use of a dangerous weapon, but the type of weapon was not identified. Dashto was also charged with unlawful restraint and aggravated unlawful restraint, but he was not convicted on either of those two counts. The Illinois court imposed concurrent prison terms of six years on each of the robbery counts on which Dashto was convicted. Dashto began serving the sentence on January 2, 1992.

In March 1993, the INS issued an order to show cause why Dashto should not be deported (1) for having been convicted of at least two crimes of moral turpitude (§ 241(a)(2)(A)(ii); see *Soetarto v. INS,* 516 F.2d 778, 780 (7th Cir.1975) ("Theft has always been held to involve moral turpitude, regardless of the sentence imposed or the amount stolen.")), and (2) for having been convicted of an aggravated felony (§ 241(a)(2)(A)(iii)). Six months later, the INS lodged an additional charge asserting that Dashto should be deported pursuant to section 241(a)(2)(C) of the Act for having been convicted of unlawfully using a firearm. 8 U.S.C. § 1251(a)(2)(C).

In September 1993, an Immigration Judge conducted a deportation hearing. As proof of Dashto's deportability, the INS tendered certified records of conviction and copies of the underlying indictments. Dashto conceded that these were sufficient to establish that he was subject to deportation under section 241(a)(2)(A)(ii) and (iii). But he denied that he had been convicted of any firearms offense that would render him subject to deportation under section 241(a)(2)(C). This dispute is key, because if the evidence establishes that Dashto has committed a firearms offense within the ambit of section 241(a)(2)(C), he cannot seek relief from deportation under section 212(c).

As proof that Dashto had committed a firearms offense, the INS relied on a "Certified Statement of Conviction" supplied by an Illinois clerk of court indicating that Dashto had pled guilty to a charge of "armed robbery with a deadly weapon, to wit a handgun." A. 315. Dashto contended that the certificate was inaccurate, and testified be-

fore the Immigration Judge that in actuality, the only weapon used during the robberies was a knife, not a handgun. A. 170. The Immigration Judge found the certificate to be insufficient evidence that Dashto had been convicted of a firearms offense, reasoning that "[t]his is only a Clerk of Court record, and does not accurately reflect what, in fact, [Dashto] was indicted for." A. 48. In light of that finding, the Immigration Judge deemed Dashto eligible for relief under section 212(c).

The Immigration Judge went on to conclude that the equities entitled Dashto to a discretionary waiver of inadmissibility:

> [T]he Court notes that [Dashto] entered the United States at the age of nine, and has resided in this country for more than sixteen years. [He] has lost touch with any remaining family in Syria, and it is apparent from the record that a return to Syria at the present time would cause him great hardship. Of significance also in this case was [Dashto's] family ties. It is apparent from the record that all of [his] immediate family reside in the United States, and I believe [Dashto] can become a productive member of our society, if allowed to remain in this country. The fact that [Dashto] is now the youngest child in his family,[1] and that his family has supported him in his effort to rehabilitate himself, I believe [he] possesses the unusual and outstanding countervailing equities that would warrant a favorable exercise of discretion.

A. 53–54. The judge deemed it a close question whether Dashto's criminal conduct was so grave that despite the factors weighing in his favor, he should nonetheless be denied discretionary relief—the six offenses to which Dashto had pled guilty were, in the judge's words, "very serious." A. 54. However, the Immigration Judge ultimately was persuaded that relief was appropriate in view of the fact that Dashto had committed no other offenses, that he appeared to demon-

strate remorse, and that he had extensive family ties in the United States. A. 54–55.

The INS appealed the judge's ruling, and the Board of Immigration Appeals sustained the appeal. Initially, the Board found the record sufficient to conclude that Dashto had been convicted of a firearms offense. Dashto had pled guilty to a charge of armed robbery, an offense which requires the carrying of a dangerous weapon. 720 ILCS 5/18–2 (Smith–Hurd 1993). Indeed, the indictment underlying the offense in question alleged that Dashto had committed the offense of armed robbery "by use of force and by threatening the imminent use of force while armed with a dangerous weapon." A. 318. Illinois law includes all manner of firearms within the definition of a "dangerous weapon." *See* 720 ILCS 5/33A–1 (Smith–Hurd 1993). Although the indictment itself did not specify what type of weapon was used, the clerk's certificate plainly identified it as a handgun. A. 315. In the Board's view, this amounted to "clear, unequivocal, and convincing evidence" (*see Woodby v. INS,* 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)), that Dashto had, in fact, used a handgun in the commission of the armed robbery and thus was deportable under section 241(a)(2)(C). A. 4–5. Relief under section 212(c) was thus unavailable to Dashto.[2]

Even if Dashto were eligible for relief under section 212(c), the Board went on, the Immigration Judge erred in granting him that relief. The Board was especially concerned by Dashto's multiple convictions for robbery and armed robbery, acts which Dashto committed to support his use of cocaine. A. 6. The Board also found Dashto's expressed remorse wanting, noting that he described himself to the Immigration Judge as "just a follower" of his accomplices and that he had not sought any sort of counseling for his drug abuse. A. 7. The Board acknowledged a number of factors weighing in Dashto's favor, including his lengthy residence in the United States, his extensive

---

1. [Footnote by this Court] Dashto's younger brother had been killed in an motorcycle accident in 1989.

2. A waiver of inadmissibility under section 212(c) may be granted to an alien facing deporta-

tion only when there is a ground of exclusion comparable to the charge triggering the deportation. *See Leal–Rodriguez v. INS,* 990 F.2d 939, 948–52 (7th Cir.1993). No exclusion corresponds to section 241(a)(2)(C).

family ties in this country, and his participation in educational programs while incarcerated. A. 6.[3] But these were insufficient to overcome the "substantial negative weight" of his criminal activity. A. 7. Deportation would be a hardship to both Dashto and his family, the Board agreed, but this hardship was not unusual (no one in his family depended on Dashto for support, for example) and was not sufficient to overcome the factors counseling in favor of deportation. A. 7.

Finally, the Board declined to remand Dashto's case to the Immigration Judge to determine whether he was eligible for an adjustment of status under section 245(a) of the Act. Noting that the discretionary relief permitted under this section was "extraordinary," the Board found that the "[t]he same balancing of factors" which had led it to conclude that Dashto did not merit relief under section 212(c) revealed him to be unworthy of relief under section 245(a). A. 8.

## II.

Dashto has challenged each aspect of the Board's ruling. We agree with his initial contention that the evidence was insufficient to establish his deportability under section 241(a)(2)(C) for the unlawful use of a firearm. Thus, Dashto was eligible to seek relief under section 212(c). We cannot agree with Dashto, however, that the Board erred in exercising its discretion to deny him relief under section 212(c). Nor do we agree with Dashto's suggestion that the Board improperly exercised its discretion as to his request for an adjustment of status under 245(a). Reasonable people might disagree with the result the Board reached; but we have no basis to conclude that the Board in any way abused its considerable discretion.

3. The Board noted, however, that Dashto did not own property in this country and had not served in the armed forces nor provided service to the community in some other fashion. A. 6.

4. Dashto challenges the Board's findings as to the firearm on other grounds as well. For example, the Board has concluded that one need not have been convicted of a firearms offense per se in order to be deportable under section 241(a)(2)(C), so long as the use of a firearm amounts to an element of or a lesser offense included within the offense of which the alien

### A. Deportability under Section 241(a)(2)(C): The Certificate of Conviction

◼ "[I]t is incumbent upon the Government in [deportation] proceedings to establish the facts supporting deportability by clear, unequivocal, and convincing evidence." *Woodby v. INS, supra,* 385 U.S. at 277, 87 S.Ct. at 484; *Garcia v. INS,* 31 F.3d 441, 443 n. 1 (7th Cir.1994). Where, as here, the Board finds that the INS has met that burden, it is our task to consider whether the deportation order is "supported by reasonable, substantial, and probative evidence." 8 U.S.C. § 1105a(a)(4). *See Woodby,* 385 U.S. at 282–83, 87 S.Ct. at 486; *Rosendo–Ramirez v. INS,* 32 F.3d 1085, 1087 (7th Cir.1994). The Board's determination that Dashto had been convicted of a firearms offense within the scope of section 241(a)(2)(C) rests on the certified statement of conviction indicating that Dashto had used a handgun to commit armed robbery. The threshold question before us, then, is whether that statement is satisfactory proof that Dashto indeed did use a handgun. We conclude that it is not.[4]

The certified statement of conviction is nothing more than the Clerk of Court's representation as to what the underlying court records—including the indictment, judgment of conviction, and sentence—reveal about the nature of the conviction. The clerk's function in completing that statement is wholly ministerial, and to the extent the statement is inconsistent with the records she has purported to summarize, it is the records themselves that control, not the clerk's characterization of them. In this case, the INS has pointed to no court record which confirms that Dashto in fact used a handgun in connection with the armed robbery to which he

was convicted. *In re Lopez–Amaro,* Interim Decision 3202, 1993 WL 256810 (BIA June 1, 1993), *aff'd, Lopez–Amaro v. INS,* 25 F.3d 986 (11th Cir.1994) (Harlington Wood, Jr., J., sitting by designation), *cert. denied,* — U.S. ——, 115 S.Ct. 1093, 130 L.Ed.2d 1062 (1995). Dashto contends that this is an erroneous reading of the statute. Given our conclusion that the evidence of record is insufficient to show that Dashto used a firearm, we need not take up this or Dashto's other arguments.

pled guilty. The indictment, for example, alleges only that:

### ALBERT DASHTO

committed the offense of ARMED ROBBERY

in that HE, BY USE OF FORCE AND BY THREATENING THE IMMINENT USE OF FORCE WHILE ARMED WITH A DANGEROUS WEAPON, TOOK CIGARETTE CARTONS AND UNITED STATES CURRENCY FROM THE PERSON AND PRESENCE OF TAHIR DILDAR, IN VIOLATION OF CHAPTER 38, SECTION 18–2–A OF THE ILLINOIS REVISED STATUTES 1985, AS AMENDED. . . .

A. 318. Dashto was, we note, separately indicted for the offense of aggravated unlawful restraint, and it was alleged in support of that charge that he "knowingly without legal authority detained Tahir Dildar while armed with a deadly weapon, *to wit: a handgun*" on the same date that he robbed Dildar. A. 319 (emphasis supplied). Possibly that is the source of the clerk's representation that the dangerous weapon Dashto used to commit the armed robbery was a firearm. But Dashto was not convicted on the unlawful restraint charge, and there is no other evidence in the record before us to indicate that Dashto in fact used a handgun in connection with the armed robbery. Without more, then, the clerk's representation is meaningless.

The Board's determination that Dashto had been convicted of a firearms offense and was deportable under section 241(a)(2)(C) was therefore not supported by "reasonable,

substantial, and probative evidence." As a result, Dashto was eligible to seek relief from deportation under section 212(c). We turn to consider whether the Board's determination that Dashto did not merit that relief was improper.

**B. Discretionary Relief under Section 212(c)**

An alien who has been a lawful permanent resident of the United States for at least seven years and who has been found deportable on certain grounds may seek a waiver of inadmissibility (i.e., relief from deportation) under section 212(c). *E.g., Groza v. INS*, 30 F.3d 814, 817–18 & n. 3 (7th Cir.1994).[5] Yet, as we have repeatedly emphasized, eligibility for relief under this section does not equate to an entitlement. *Id.* at 818. "[T]he alien bears the burden of demonstrating that his application merits favorable consideration." *Palacios–Torres v. INS*, 995 F.2d 96, 97 (7th Cir.1993).

The Board's evaluation of a section 212(c) application "must balance 'the social and humane considerations in the alien's favor against any adverse factors that demonstrate his or her undesirability as a permanent resident in the United States.'" *Henry v. INS*, 8 F.3d 426, 432 (7th Cir.1993) (quoting *Cortes–Castillo v. INS*, 997 F.2d 1199, 1202 (7th Cir.1993)). *In re Marin*, 16 I. & N. Dec. 581 (BIA 1978), supplies the framework for the Board's analysis and identifies both the positive and negative factors that the Board will take into account. *See Henry*, 8 F.3d at 432.[6] Notably, when the alien is facing deportation for having committed a serious crime or series of crimes, "a heightened showing of favorable evidence is required to demonstrate unusual or outstand-

---

**5.** "Although § 212(c) literally refers only to the excludability of aliens seeking readmission to the United States, it has been interpreted to apply also 'to lawful permanent residents who have not left the United States but [who] meet the seven-year requirement and face deportation.'" *Groza*, 30 F.3d at 818 n. 3 (quoting *Henry v. INS*, 8 F.3d 426, 430 n. 4 (7th Cir.1993)).

**6.** Factors favorable to the applicant include family ties within the United States; a lengthy residency within the country, especially when the alien came here at an early age; hardship to the applicant and his family in the event he is de-

ported; service in the armed forces; gainful employment; ownership of property or other business ties; contribution to the community; if convicted of a crime, evidence of genuine rehabilitation; and a good character. Adverse factors include the circumstances subjecting the alien to deportation; any additional significant violations of the immigration laws; the existence and nature of a criminal record; and any evidence tending to show that the alien has a bad character or is undesirable as a permanent resident. *Marin*, 16 I. & N. at 584–85.

ing equities to offset the grounds for ... deportation." *Espinoza v. I.N.S.*, 991 F.2d 1294, 1297 (7th Cir.1993); *see also Palacios–Torres*, 995 F.2d at 97; *Akrap v. INS*, 966 F.2d 267, 272 (7th Cir.1992); *In re Edwards*, Interim Decision 3134, at 7, 1990 WL 385757 (BIA May 2, 1990) (citing *Marin*, 16 I. & N. Dec. at 585).

■ The Board's ultimate decision as to whether an applicant is entitled to relief under section 212(c) is, of course, discretionary, and our review of that decision is therefore limited. *Akrap*, 966 F.2d at 272.

> We review discretionary denials for an abuse of discretion, and we may reverse only if the decision was made without a rational explanation, ... inexplicably departed from established policies, or rested on an impermissible basis. The Board need not write an exegesis on every contention raised by the petitioner; rather, the Board must engage in a careful, individualized review of the evidence and render an opinion that enables a reviewing court to perceive that it has heard and thought and not merely reacted. In undertaking our review, we may not reweigh the evidence and substitute our own judgment for that of the Board.

*Groza*, 30 F.3d at 818 (internal quotation marks and citations omitted).

■ We find no abuse of discretion in the Board's decision to deny Dashto section 212(c) relief. The face of the Board's decision leaves no doubt that it carefully examined Dashto's case within the *Marin* framework, balancing those circumstances favorable to Dashto against those which were adverse; this is an approach we have approved on multiple occasions. *Akrap*, 966 F.2d at 272–73. Ultimately, the Board simply found no evidence of any "unusual or outstanding equities" to offset the serious nature of the six robberies (three of them armed) to which Dashto had pled guilty. Dashto criticizes the Board's findings as to certain factors. For example, the Board perceived a lack of genuine remorse in Dashto's testimony before the Immigration Judge that he was "just a follower" of his cohorts (A. 7); Dashto asserts that the Board merely seized on an isolated remark and overlooked other-

wise ample evidence of Dashto's contrition. The Board also cited Dashto's failure to seek counseling for his drug use (A. 7); but Dashto maintains that there was no evidence to suggest he was ever so *addicted* to cocaine as to need counseling. Reasonable people might judge such points differently. But even if the record is viewed through the more favorable lens that Dashto urges upon us, the equities are not so favorable that the Board was compelled to grant him relief. And having considered each of the several objections Dashto has raised to the Board's analysis, we cannot say the Board's findings lacked the support of substantial evidence, that its decision was without rational explanation, or that it considered any inappropriate factors. It is not our province, we reiterate, to reweigh the evidence before the Board. *Groza*, 30 F.3d at 818; *Akrap*, 966 F.2d at 271.

## C. Discretionary Adjustment of Status under Section 245(a)

■ Dashto had also sought from the Immigration Judge an adjustment of status pursuant to section 245(a) of the Act. That section authorizes the Attorney General (who in turn has delegated her authority to the Board) to adjust the status of an alien who is eligible for an immigrant visa to that of a lawful permanent resident if (1) the alien applies for the adjustment; (2) the alien is eligible to receive an immigrant visa and is admissible to this country for lawful permanent residence; and (3) an immigrant visa is immediately available to the alien when he applies for the adjustment of status. 8 U.S.C. § 1255(a); *Palmer v. INS*, 4 F.3d 482, 484 (7th Cir.1993). Although he is subject to deportation, Dashto may nonetheless seek an adjustment of status. *See id.* However, because Dashto committed crimes of moral turpitude, he is not admissible to the United States for permanent residence. 8 U.S.C. § 1182(a)(2)(A)(i). Only if he obtained a waiver of inadmissibility pursuant to section 212(h) of the Act, 8 U.S.C. § 1182(h), would he remain eligible to seek an adjustment of status. *Palmer*, 4 F.3d at 485. Both the waiver and the adjustment of status are matters committed to the Board's discretion. 8

U.S.C. §§ 1182(h), 1255(a); *see Palmer,* 4 F.3d at 484, 485, 490; *Patel v. INS,* 738 F.2d 239, 242 (7th Cir.1984).

■ The Board's treatment of Dashto's request for an adjustment of status was abbreviated. The Immigration Judge had never addressed Dashto's eligibility for relief under section 245(a) given his finding that Dashto merited relief under section 212(c). Dashto sought a remand so that the judge might consider an adjustment of status, but the Board deemed that step unnecessary:

> In the present case we have already determined that [Dashto] is unworthy of relief from deportation on a discretionary basis, with regard to section 212(c) relief. The same balancing of factors persuades us that [Dashto] has not made a prima facie showing that he warrants the extraordinary discretionary relief of adjustment of status. A remand of these proceedings is therefore not warranted.

A. 8 (citations omitted). Dashto contends that the Board has departed from the norm of remand and criticizes the Board for relying on its adverse determination of the 212(c) claim without giving fresh consideration to the equities bearing on relief under section 245(a).

We find nothing improper in the Board's handling of this issue, however. Without question it would have been within the Board's discretion to remand the case to the Immigration Judge for consideration of Dashto's application for an adjustment of status, but the Board was not bound to take this route merely because the Immigration Judge had not taken up the question himself first. The record had already been fully developed vis à vis the section 212(c) considerations, and the Board was thus familiar with the equitable factors weighing for and against allowing Dashto to remain in this country. Of course, as Dashto emphasizes, section 245(a) has a focus different from that of section 212(c) and calls for an inquiry that is, to some extent at least, unique. Yet, as with section 212(c), adjustment of status is ultimately the Board's discretionary call,

premised on a balancing of factors that are much the same as those taken into consideration under section 212(c). *Compare Henry,* 8 F.3d at 432, *with Patel,* 738 F.2d at 242–43. In this case, the Board simply cut to the chase, set aside the various eligibility criteria set forth in sections 245(a) and 212(h),[7] and considered whether, ultimately, Dashto might merit a favorable exercise of its discretion. In harkening back to Dashto's failure to make a case for relief under section 212(c), the Board was not, in our view, laboring under any misimpression that the analysis under section 245(a) was identical and would in all cases lead to the same result. We take the Board to have meant only that given the gravity of Dashto's criminal conduct, and the absence of any sufficiently favorable circumstances to overcome that conduct, his application for an adjustment of status was going nowhere. *See Palmer,* 4 F.3d at 490. Whatever distinctions one might cite between the analyses called for under sections 212(c) and 245(a), Dashto can point to no factor (or balance of factors) that might have had a particular and compelling bearing on one but not the other analysis in this case. Nor has he shown us that the Board's analysis was in some significant way hampered for want of any further development of the record that might have occurred on remand. Granting an adjustment of status "is an extraordinary act and a matter of grace." *Patel,* 738 F.2d at 242. The Board's determination that Dashto simply could not make a case for this unusual relief was not an abuse of discretion.

### III.

Having concluded that the Board did not abuse its discretion in denying Dashto relief under sections 212(c) and 245(a), we DISMISS the petition for review and AFFIRM the order of deportation.

---

7. *See Palmer,* 4 F.3d at 490 ("'if the Attorney General decides relief should be denied as a matter of discretion, the statutory eligibility requirements need not be addressed'") (quoting *Hernandez–Patino v. INS,* 831 F.2d 750, 752 (7th Cir.1987)).