[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 30, 2003
THOMAS K. KAHN
CLERK

_____

No. 00-15783

_____

Agency Docket No. A90-358-688

ALBERT ADEFEMI,

Petitioner-Appellant,

versus

JOHN ASHCROFT, as Attorney General of U.S.,
Ms. ROSEMARY MELVILLE, as the District
Director for INS,
UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE,

Respondents-Appellees.

_____

Petition for Review of a Final Order of
the Board of Immigration Appeals

_____

(June 30, 2003)

Before BARKETT and KRAVITCH, Circuit Judges, and FULLAM[*], District Judge.

BARKETT, Circuit Judge:

Albert Adefemi, a citizen of Nigeria, petitions for review of a decision of the Board of Immigration Appeals, challenging its determination that the Immigration and Naturalization Service ("INS") presented sufficient evidence to demonstrate that he could be deported on the basis of a firearms offense.

After entering the United States in 1977 without inspection, Adefemi became a lawful temporary resident on August 17, 1987 and a permanent resident on March 20, 1989. In 1993, the INS initiated deportation proceedings on the basis of two theft offenses of which Adefemi was allegedly convicted in 1991. Adefemi did not contest his deportability, applying instead for discretionary relief under section 212(c) of the Immigration and Nationality Act ("INA"), as amended, 8 U.S.C. § 1182(c) (repealed 1996). At that time, section 212(c) authorized the Attorney General to determine whether equitable considerations, such as a family in the United States or a negligible criminal record, favored sparing an immigrant the hardship of deportation. Acting on the Attorney General's authority, the same administrative judges who preside over deportation proceedings would also consider applications for discretionary waivers under section 212(c).

---

[*]Honorable John Fullam, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

2

Over the course of seven years, the INS twice amended its charges against Adefemi, eventually alleging that he was deportable on the basis of a 1991 firearms conviction as well as the theft offenses. Adefemi was found deportable on all grounds. An immigration judge ("IJ") deemed the INS to have established the firearms conviction "by evidence which is clear, convincing and unequivocal." Oral Decision of the Immigration Judge, Nov. 10, 1999, at 8. The judge then determined that Adefemi was ineligible for a waiver of deportation under Section 212(c) because controlling administrative precedent limited such relief to persons who are deportable for a reason that would also warrant an alien's "exclusion" prior to admission into the United States. Holding Adefemi's firearms offense not to have such an analogue in the exclusion context, the court determined that it "must" find Adefemi ineligible for discretionary relief under section 212(c) because of the firearms offense. Id. at 11.

Adefemi appealed and in 2000 was denied relief by the Board of Immigration Appeals ("BIA" or "Board"), which had earlier issued decisions addressing other aspects of the INS's case in 1997 and 1999. Like the IJ, the Board found that Adefemi was deportable on the basis of the firearms offense and ineligible for section 212(c) relief as a result. Adefemi filed a petition for review with this Court, and a three-judge panel granted his motion for a stay of

3

deportation on March 5, 2001. He now raises a range of claims pertaining to his lengthy administrative proceedings.

## DISCUSSION

The upheaval in immigration law effected by two pieces of 1996 legislation, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, has raised numerous and ponderous questions regarding both the substantive law to be applied in immigration proceedings and the extent of federal judicial authority to review determinations made by administrative tribunals. One particularly vexing matter has been the extent to which convictions for certain statutorily enumerated crimes operate as complete bars to discretionary relief from deportation. See, e.g., INS v. St. Cyr, 533 U.S. 289 (2001). Although the complexities of this issue have to date bedeviled the course of Adefemi's administrative proceedings, the parties agreed at oral argument that a remand to allow Adefemi to apply for discretionary relief will be appropriate should we decide he is not deportable on the basis of the asserted firearms offense.[1] We therefore commence with the question of our

---

[1]Unlike the firearms offense, the theft offenses of which the Board also found Adefemi to have been convicted, even if now classified as "aggravated felonies," see Mohammed v. Ashcroft, 261 F.3d 1244, 1250 (11th Cir. 2001), do not prevent him from applying for section 212(c) relief from deportation. See St. Cyr, 533 U.S. at 326 (holding that 1996 abolition of section 212(c) relief is not retroactively applicable to aliens who would have been eligible for such relief at

4

jurisdiction to hear Adefemi's challenge to this discrete aspect of the administrative proceedings in his case.

## I.  JURISDICTION

Because deportation proceedings against Adefemi were commenced before April 1, 1997, and a final deportation order was entered more than thirty days after September 30, 1996, our jurisdiction is governed by former Section 106(a) of the INA, 8 U.SC. § 1105a (1996), as amended by the transitional rules set forth in Section 309(c) of the IIRIRA (reprinted in 8 U.S.C.A. § 1101 (historical notes)). See Al Najjar v. Ashcroft, 257 F.3d 1262, 1276-77 (11th Cir.), reh'g en banc denied, 275 F.3d 1085 (2001).  The jurisdiction of the courts of appeals under IIRIRA is triggered by the entrance of a "final order" of deportation.  See IIRIRA, § 309(c)(4)(C) (providing for petition for review to be filed not later than 30 days after date of "final order"); 8 U.S.C. § 1105a(a)(1) (referring to review of "final deportation order").  A deportation order becomes final "upon dismissal of an appeal by the Board."  8 C.F.R. § 241.31 (2002).  Because the Board did not conclusively dismiss Adefemi's appeal until its October 4, 2000 decision, its earlier

---

time they entered guilty pleas); Mayers v. INS, 175 F.3d 1289, 1304 (11th Cir. 1999) (holding separate statutory limitation on section 212(c) relief for aggravated felons inapplicable to cases pending as of limitation's enactment).

decisions in 1997 and 1999 were not final orders.[2]  By filing his petition for review on November 2, 2000, 29 days after the Board dismissed his appeal, Adefemi satisfied the 30-day timely filing requirement set forth in the statute.  IIRIRA, § 309(c)(4)(C).

The transitional rules provide that:

> there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act). . . .

IIRIRA § 309(c)(4)(G).  At the time of IIRIRA's enactment, one of the statutes

---

[2]The INS mistakenly asserts in its brief that Adefemi cannot challenge determinations reached in the 1997 and 1999 orders because he failed to file timely petitions for review with this Court. This argument fails to acknowledge the Board's own recognition in those decisions that further administrative proceedings would be necessary to determine Adefemi's immigration status and his entitlement to discretionary relief.  Cf. Del Pilar v. U.S. Attorney General, No. 02-13539, __F.3d__ (11th Cir. Apr. 23, 2003) (holding that Board decision finding removable alien ineligible for discretionary relief, and remanding for sole purpose of allowing alien to designate country of removal, was "final order" because it "amounted to an order that [the alien] be removed").  The Board's 1997 decision stated that the "appeal is dismissed" but then expressly invited Adefemi to move to reopen proceedings on a specific basis, thereafter granting the contemplated motion and remanding "to the Immigration Judge for further proceedings consistent with this order."  Decision of the Board of Immigration Appeals, Mar. 25, 1997 (inviting motion to reopen); Decision of the Board of Immigration Appeals, Oct. 16, 1998 (granting motion to reopen).  In its 1999 decision, the Board made no reference at all to dismissal, but again "remanded to the Immigration Judge in order that the respondent may be afforded an opportunity to apply for section 212(c) relief."  Decision of the Board of Immigration Appeals,  Jul. 12, 1999.  The availability of section 212(c) relief was thereafter placed in question by the INS's filing of a new charge of deportability premised on the alleged firearms conviction.  Given the nature of the Board's 1997 and 1999 decisions, Adefemi's litigation of his case before the administrative tribunals reflects an appropriate effort to exhaust administrative remedies, not, as the INS contends in its brief, a failure to comply with the timely filing requirement.

incorporated by this transitional rule directed as follows:

> Any alien who at any time after entry is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of Title 18) in violation of any law is deportable.

INA § 241(a)(2)(C), 8 U.S.C. § 1251(a)(2)(C) (1996). Hence the transitional rule purports to place strict limits on the judicial review available to aliens who, like Adefemi, have been found deportable because of a firearms offense.

It is by now well established, however, that we retain jurisdiction in such cases to the extent necessary to review whether the statutory prerequisites of Section 309 apply. Farquharson v. U.S. Attorney General, 246 F.3d 1317, 1320 (11th Cir. 2001) (citing Lettman v. Reno, 168 F.3d 463, 465 (11th Cir. 1999)); cf. Calcano-Martinez v. INS, 533 U.S. 348, 350 n.2 (2001) (noting government's concession that "the courts of appeals have the power to hear petitions challenging the factual determinations thought to trigger [a substantially identical] jurisdiction-stripping provision"). We therefore have jurisdiction to determine whether Adefemi is (1) an alien who is (2) deportable (3) by reason of a firearms offense. Farquharson, 246 F.3d at 1320.

The transitional rule set forth in Section 309(c)(4)(G) creates a certain

ambiguity as to when an alien is deportable "by reason of a firearms offense." Whereas the transitional rule refers generally to aliens "deportable by reason of having <u>committed</u>" a range of crimes, the underlying statute which it incorporates by reference makes aliens "deportable" only when they have been "<u>convicted</u> under any law" of a qualifying firearms offense. We have previously reasoned, in examining comparable immigration provisions structured in the same fashion, that the meaning of the term "deportable" as used in the provision limiting our jurisdiction must be derived from the underlying statute's specification of how an alien becomes deportable. <u>Fernandez-Bernal v. Attorney General</u>, 257 F.3d 1304, 1308-09 (11th Cir. 2001) (construing provisions relating to controlled substance offenses). That is, we have jurisdiction to determine whether Adefemi is deportable because he has been "convicted under any law" of a qualifying firearms offense. 8 U.S.C. § 1251(a)(2)(C).

Our jurisdictional inquiry thus merges with the merits of Adefemi's challenge, which rests on his assertion that the INS failed to prove a qualifying firearms conviction by sufficient evidence. We therefore proceed to the merits on the understanding that we have jurisdiction to grant relief if the government failed to prove that Adefemi was convicted of a firearms offense.

II.  SUFFICIENCY OF EVIDENCE DEMONSTRATING CONVICTION

8

In the administrative proceedings under review, the INS relied exclusively on a single piece of evidence in support of its charge that Adefemi was deportable on the basis of a firearms conviction. This was a two-sided, preprinted document that would be colloquially termed a traffic "ticket." On the front appears a uniform citation form used to charge drivers with moving violations. On the reverse is boilerplate language for use in recording several types of action taken in the City Court of Atlanta, such as the receipt of a plea or the imposition of sentence.

The IJ determined that "Respondent waived a trial by jury, pled guilty, and was convicted and directed to pay a fine of $330, [or in] default of such payment be confined for a term of 12 months." Oral Decision of the Immigration Judge, Nov. 10, 1999, at 3. The Board affirmed, but unlike the IJ, was silent as to whether Adefemi had pled guilty. In the proceedings before these tribunals, the only evidence presented by the INS was the two-sided document. Although Adefemi raises several challenges to the Board's decision, his central contention is that this ticket, the sole piece of evidence against him, was insufficient to demonstrate his deportability on the basis of a firearms conviction. See Petitioner's Supplemental Brief at 20-26.[3]

---

[3]Adefemi also argues the INS should have been estopped from seeking to deport him, some six years after the commencement of proceedings, on the basis of an offense alleged to have occurred two years before proceedings began. We need not reach this claim in light of our resolution of other issues in this case.

9

Whether a conviction has been sustained is a question of fact on which we defer to the Board if its determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. 1105a(a)(4) (repealed 1996) (applicable to this case under IIRIRA § 309(c)(4)(1)(A)). Under this "substantial evidence" standard, we will not reverse the Board's determination unless "a reasonable factfinder would have to conclude" that no conviction has been proved. See Lorisme v. INS, 129 F.3d 1441, 1445 (11th Cir. 1997) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).

Although our own review is deferential, the INS must prove an alien's deportability by "clear and convincing evidence." 8 U.S.C. § 1229a(c)(3)(A); Woodby v. INS, 385 U.S. 276, 286 (1966) (requiring "clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true"). Under this "intermediate standard" of proof, Addington v. Texas, 441 U.S. 418, 424 (1979), the government bears a "heavy burden." Berenyi v. District Director, INS, 385 U.S. 630, 636 (1967). As a court of review, we are well acquainted with the task of integrating our own deferential review of factual determinations with the heightened burden of proof borne by certain parties to litigation. For example, when a defendant in a criminal case argues on appeal that the evidence was insufficient to convict him, we ask whether a reasonable trier of fact, after viewing

10

the evidence in the light most favorable to the government, could find that the defendant's guilt was established beyond a reasonable doubt.  See, e.g., United States v. Miles, 290 F.3d 1341, 1355 (11th Cir.), cert. denied, 123 S. Ct. 707 (2002).  Although this standard safeguards the role of the trier of fact, it also assures that "application of the beyond-a-reasonable-doubt standard to the evidence is not irretrievably committed to jury discretion."  Jackson v. Virginia, 443 U.S. 307, 318 n.10 (1979).

Here, our approach is of a similar form but different content: we ask whether the BIA could reasonably conclude that the government has shown Adefemi deportable by clear and convincing evidence.  Hence we must determine whether the INS's evidence could justify the elevated degree of confidence corresponding to its intermediate standard of proof.[4]  The Board was clearly cognizant of the

---

[4]The dissent fails to recognize the necessity of integrating our deferential appellate review with the INS's demanding burden of showing deportability by clear and convincing evidence.  While it is true, as the dissent stresses, that this Court will not reverse a factual finding of the Board unless the evidence compels a contrary determination, the dissent is insufficiently precise in identifying the determination we must review.  The question is whether the INS proved the conviction at issue by clear and convincing evidence.

In this case, the integration of the INS's clear-and-convincing burden with our deferential review of factual determinations is not difficult because only a single fact (the conviction) and a single piece of evidence (a traffic ticket, which we discuss below) are at issue.  We must decide whether a reasonable fact-finder could, on the basis of the incomplete and ambiguous writing on this ticket, be persuaded with the requisite degree of certainty that Adefemi was convicted of a firearms offense.  Making this determination involves us in a deferential review not of the BIA's factual finding simpliciter, but of its conclusion that the evidence supported this finding with sufficient force to establish deportability.

The dissent apparently believes it unnecessary to reckon with the government's heightened burden of proof because it regards the clear-and-convincing standard as a relic of several Supreme Court cases whose precedential value, in its view, "has likely been lessened by

11

heightened standard to which the INS is held, concluding its opinion by quoting the Supreme Court's directive in <u>Woodby</u>, 385 U.S. at 286, that deportability be established by "clear, unequivocal, and convincing evidence." The Board found this standard satisfied by the two-sided, preprinted form relied upon by the INS as the exclusive evidence of a firearms conviction.

In order to review this determination, we must examine a somewhat inscrutable combination of signatures, stamps, and handwritten marks recorded on this document. We begin with the front side, on which appears a uniform citation form. On a blank space next to the word "Offense," a handwritten entry states that Adefemi, in violation of Section 16-11-126 of the Georgia Code, "had a 22 cal RG10 in console between seats." Although Ga. Code Ann. 16-11-126 proscribes the carrying of a range of concealed weapons other than firearms, Adefemi does not contend that a "22 cal RG10" is anything other than a firearm. Hence the citation form, which was signed by an arresting officer, alleges unlawful possession and/or concealment of a firearm.

It is the material contained on the document's reverse side, however, upon which the BIA focused in finding that the INS had shown Adefemi's conviction of

the passage" of AEDPA and IIRIRA. Dissenting Opinion at 1 n.1. That is incorrect, for IIRIRA itself states that the INS "has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable." <u>See</u> Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 304(a)(3), 110 Stat. 3009, 3009-592 (1996) (codified at 8 U.S.C. § 1229a(c)(3)(A)).

12

a firearms offense by clear and convincing evidence. Although the BIA refers to the reverse side as a "criminal court certificate of disposition," that phrase does not appear anywhere on the copy entered in the record. Near the top of the form appear two identical signatures. Both the first and the last names of the signature appear to begin with the letter "A," and the remainder of each signature is consistent with the name Albert Adefemi. Since the front side of the document clearly charges Adefemi with an offense, and since Adefemi has never argued that the signatures are not his, we will treat them as such. One of the signatures appears to affirm that "On Arraignment, The Defendant Pleads NOT GUILTY," whereas the other is entered in a section titled "Plea of Guilty and Waiver." The form provides no means of discerning which of these signatures reflects Adefemi's actual plea in this case: there is no indication that he amended an initial plea of not guilty to one of guilty, nor has anything been written in a space provided for stating the charge to which Adefemi, if he did enter a guilty plea, in fact admitted. Consistent with this ambiguity, none of three boxes printed next to each of three possible pleas – guilty, not guilty, and "nolo cont'd" – have been checked in a separate section of the form.

Below the sections bearing Adefemi's signatures is another section titled "Disposition and Sentence," in which the word "Probation" has been rubber-

13

stamped.  Still lower, in a separate section, the number "330.00" has been written

on a space for designating a "fine."  The next line appears[5] to state that a term of

confinement shall be served should payment be defaulted.  However, the portion of

the form titled "Disposition and Sentence" has been left entirely blank apart from

the "Probation" stamp and a second stamp that reads "State Case."  Significantly,

nothing has been written in spaces specifically reserved for identifying the

"Sentence: Amount Fine/Forfeiture $" and the number of "Days (Months)

probated."  The failure of the Atlanta City Court to complete these sections makes

it difficult to interpret the meaning of the"Probation" stamp, since the imposition

of a probationary sentence would seem to require that a term of probation be set.

By the same token, no ready explanation appears for the fact that a fine has been

indicated, not on the appropriate line in the "Disposition and Sentence" section, but

only in a separate section under an indiscernible heading beginning with the words

"Upon Trial, the Defendant."  Unlike the "Disposition and Sentence" portion of the

form, no reference is made in this other section to any adjudication of "guilt" or

---

[5]Specifically, several handwritten marks have been made in a blank space preceded by the words "confined for a term of" and followed by two words within parentheses, one of which has been crossed out to leave the word "months."  The IJ read the handwritten marks to indicate that a sentence of 12 months would be imposed if Adefemi failed to pay a fine.  The administrative court acknowledged the imperfect legibility of the handwriting, remarking that it might also indicate "the number 10 or even perhaps the number 16." Oral Decision of the Immigration Judge, Nov. 10, 1999, at 3-4.  A further deficiency, not remarked upon by the immigration judge, is that nothing has been written in an additional blank space left for specifying the place of confinement.

14

imposition of "sentence." Instead, the boilerplate printed on the form reads simply, "It is considered, ordered and adjudged that the defendant pay a fine of ___ dollars and (in defa[indiscernible] of such payment) be confined for a term of ___ (days[6]/months) in the ___. . . . The confinement specified shal[indiscernible] be suspended on payment of the fine and on condition defendant does not again violate the laws of Georgia."[7]

In the absence of additional evidence by which the INS might have clarified the meaning of the form, we do not think it may be said that this document, marked in this manner, provides clear and convincing evidence of a firearms conviction. The very ambiguity of the document does make it impossible to say, with absolute certainty, that Adefemi was not convicted of a firearms offense. But we think this same ambiguity makes it unreasonable to conclude that the document is clear and convincing evidence of such a conviction. Our conclusion rests on the highly

---

[6]The word "days" is not clearly discernible because a line has been drawn through it, apparently for the purpose of leaving the word "months" to describe the appropriate sentence in default of payment. Since the Atlanta City Court's jurisdiction is limited to certain types of misdemeanor offenses, see Act of Apr. 4, 1996, No. 791, § 3, 1996 Ga. Laws 627, 628; Wickham v. State, 544 S.E.2d 439, 441-42 & nn.4-5 (Ga. 2001), it is unlikely that the form would contemplate the imposition of sentences of multiple "years." It is conceivable that the stricken word is "weeks," but the remnants of type visible on the document are more consistent with the word "days."

[7]The omission indicated in the excerpted text consists exclusively of an imperfectly discernible series of phrases, separated by parentheses, indicating where confinement shall be served should payment be defaulted. Two of the parenthetical references are "in the City Prison" and "as the State Director of Corrections may direct."

15

tenuous nature of any inferences drawn from what is in essence nothing more than the front and back of a traffic ticket.[8] While the document does indicate a fine of $330, it fails to specify the basis for this penalty. Nowhere does it explicitly indicate either the fact of conviction or the offense for which any conviction was entered. It likewise fails to indicate whether Adefemi pled guilty or, if he did, the charge to which he admitted.

Even were we to assume that the clerical stamp reading "Probation" and the reference to a fine are clear and convincing evidence of some kind of conviction, we do not think it can be said that they are clear and convincing evidence of conviction of a firearms offense. The fact that the front side of the document charges such an offense does not mean Adefemi pled to or was convicted of one. Rather, the summary nature of the court record may well suggest that Adefemi pled guilty to a different, lesser offense that needn't be carefully memorialized because it gave rise to no enduring, collateral consequences. The reverse side simply fails to offer any clear guidance as to what this offense may have been.

One possibility is that Adefemi admitted to a lesser violation, i.e., an offense graded as less serious than a misdemeanor. Indeed, the court that processed Adefemi's case routinely affords such treatment in carrying out its primary

---

[8]We do not hold that such a document may never be sufficient evidence of a conviction in deportation proceedings, only that the document at issue here, in its present form, is insufficient.

16

function: the adjudication of traffic offenses. The Atlanta City Court's jurisdiction is limited to traffic violations and misdemeanors "arising out of the same occurrence" as a cited traffic offense. Act of Apr. 4, 1996, No. 791, § 3, 1996 Ga. Laws 627, 628; see also Wickham v. State, 544 S.E.2d 439, 441-42 & nn.4-5 (Ga. 2001) (reproducing provisions of Georgia Constitution similarly limiting jurisdiction of Atlanta City Court prior to 1996). In order to exercise this jurisdiction, the court has established a Traffic Violations Bureau ("the traffic bureau"). See Geng v. State, 578 S.E.2d 115, 116 (2003). Once submitted to the jurisdiction of the traffic bureau, an offense "shall be characterized and classified as a traffic violation and shall not be considered as a misdemeanor," nor entered on the city court's separate misdemeanor docket. Ga. Code Ann. §§ 40-13-60, 40-13-61. Because the firearms offense with which Adefemi was charged is graded as at least a misdemeanor, see Ga. Code Ann. § 16-11-126, the traffic bureau has no jurisdiction over prosecutions for this offense.

Notably, the document submitted by the INS is consistent with a traffic bureau adjudication by which Adefemi avoided a weapons conviction through a summary disposition fining him $330. Several aspects of the document's reverse side support this interpretation. First, a line has been drawn through a space for identifying the charge to which a defendant pleads guilty. The failure to complete this section may indicate that the precise offense underlying Adefemi's fine did not

17

require memorialization because it was a non-misdemeanor traffic violation to which no collateral consequences, apart from those relating to driving privileges, could attach. The form's silence as to other plea-related information – for example, nothing has been written in a space designated for confirming the voluntariness of any plea – is likewise suggestive of the relaxed constitutional standards applicable in the enforcement of rules of the road. Cf. Dixon v. Love, 431 U.S. 105, 115 (1977) (finding no due process violation in Illinois regulatory scheme allowing driver's license to be revoked without prior administrative hearing); Argersinger v. Hamlin, 407 U.S. 25, 38 & n.10 (1972) (pointing out that adjudications of traffic offenses, even inasmuch as they "technically fall within the category of 'criminal prosecutions,'" are often conducted in manner that prevents Sixth Amendment right to counsel from attaching).

Second, the certification at the bottom of the reverse side of the citation states that "the information on this ticket is a true abstract of the record of this court or bureau in this case" (emphasis added). This boilerplate recitation makes clear that the documentation is of a form routinely relied upon by the traffic bureau in its adjudication of non-misdemeanor violations.

Third, the location of Adefemi's signatures on the form are consistent with adjudication by the traffic bureau. As discussed above, the two signatures are seemingly to opposite effect because one is written above the words "On

18

Arraignment, the Defendant Pleads Not Guilty" and the other appears in a section entitled "Appearance, Plea of Guilty and Waiver." The first signature, however, not only accompanies a "Not Guilty" stamp but also fills a line following the words "Waives Trial by Jury." At the time of Adefemi's adjudication, such a waiver was consistent with Georgia law providing that traffic offenses "shall be tried before a judge of the court which established the traffic violations bureau." Ga. Code Ann. § 40-13-60 (emphasis added); Geng, 578 S.E.2d at 116 (reading statute to "restrict[] an offender whose case is disposed of in the traffic violations bureau to trial by a judge").[9]

For all of these reasons, the form document supports the inference that Adefemi's case was adjudicated as a traffic violation, with the "Probation" stamp meaning simply that Adefemi remained subject to a possible sentence of confinement until such time as he paid the $330 fine imposed. The possibility that "probation" carried this meaning draws force from the document's silence as to the period of time for which probation was to continue. Regardless of whether the word was used in this sense, it is indisputable that the document fails to specify with any clarity what offense was the basis for any probationary sentence imposed. It is therefore unreasonable to regard it as clear and convincing evidence of a

---

[9]On the basis of this reading, the Georgia Supreme Court has held the statute unconstitutional, allowing enforcement of the remainder of the traffic bureau statutory scheme upon severance of the provision "which seemingly restricts a traffic violator to a bench trial." Geng, 578 S.E.2d at 117.

19

conviction on any specific charge, much less the firearms offense alleged by the INS as a basis for Adefemi's deportation. Our conclusion is in accord with those of our sister circuits that have considered claims based on the INS's failure to satisfy its burden of producing clear and convincing evidence of deportability. See Dashto v. INS, 59 F.3d 697, 701 (7th Cir. 1995) (holding that clerk of court's "certified statement of conviction indicating that Dashto had used a handgun to commit armed robbery" was not "satisfactory proof" of unlawful use of firearm); Murphy v. INS, 54 F.3d 605, 610-12 (9th Cir. 1995) (vacating BIA determination based on INS form document and immigration agent's hearsay statement).

If Adefemi was in fact convicted of a firearms offense, there exist a wide range of alternative means by which the INS might have established as much. The applicable provision of federal immigration law states that a conviction may be proved by official records of judgments, by docket entries from court records, by minutes of court proceedings, and by records of penal institutions. 8 U.S.C. § 1229a(c)(3). Alternatively, the document at issue could have been explained by submitting affidavits or testimony from court officials describing the court's record-keeping practices and explaining the meaning of the form at issue here.

In sum, while the documentation retrieved from the Atlanta City Court does show that a police officer cited Adefemi for a firearms offense, it offers only a cryptic record of how this charge was ultimately disposed. We think the "clear and

20

convincing" evidentiary standard applicable in deportation proceedings requires something more before an individual may be "compelled by our Government to forsake all the bonds formed here and go to a foreign land where he often has no contemporary identification." Woodby, 385 U.S. at 285. Accordingly, we conclude that the INS has not carried the burden of proof it bore in establishing deportability on the basis of a firearms conviction under 8 U.S.C. § 1251(a)(2)(C).

## CONCLUSION

The Board's October 4, 2000 decision finding Adefemi deportable under 8 U.S.C. § 1251(a)(2)(C) is REVERSED. Both parties agreed at oral argument that Adefemi would be eligible to apply for discretionary relief under section 212(c) had he not been found deportable on this basis. Accordingly, we REMAND to the Board with instructions to permit Adefemi to apply for a waiver of deportation under section 212(c). Our disposition shall not bar Adefemi, should he be denied discretionary relief, from filing a new petition renewing or raising appropriate claims. The stay of deportation entered on March 5, 2001 shall remain in effect until such time as this Court, on motion of the government and after due opportunity by Adefemi to respond, orders it be dissolved.

REVERSED AND REMANDED.

KRAVITCH, Circuit Judge, concurring in part and dissenting in part:

I concur in Part I of the majority opinion.

I dissent from Part II because in my view the majority opinion exceeds the established scope of review when it reverses the BIA's factual determination that Adefemi was convicted of a firearms offense. The majority opinion correctly indicates that we review the BIA's factual determinations under the substantial-evidence test, see Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001), and that we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"[1] Najjar, 257 F.3d at 1283–84 (quoting Lorisme v. INS, 129 F.3d 1441, 1444–45 (11th Cir. 1997)). The majority opinion, however, fails to recognize the limits on the scope of our review of BIA factual findings. This court has held that the substantial-evidence test is deferential and that "we may not 're-weigh the evidence' from scratch." Mazariegos v. INS, 241 F.3d 1320, 1323 (11th Cir. 2001); see also Najjar, 257 F.3d at 1278 ("Courts of appeal sit as reviewing bodies to engage in highly deferential review of BIA and IJ determinations. . . . Commensurate with

---

[1]  The majority opinion cites Addington v. Texas, 441 U.S. 418, 424 (1979), for the proposition that our review of the BIA's factual finding is an "intermediate standard" and Berenyi v. District Director, INS, 385 U.S. 630, 636 (1967), for the proposition that the government bears a "heavy burden." Although these cases are binding Supreme Court precedent, their precedential value has likely been lessened by the passage of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), IIRIRA, and precedent interpreting those statutes, which have all occurred since these cases were decided. As noted by the majority, AEDPA and IIRIRA have caused an "upheaval in immigration law."

22

this role, we cannot engage in fact-finding on appeal, nor may we weigh evidence that was not previously considered below."). Furthermore, the majority opinion ignores the rule that "[t]o reverse a factual finding by the BIA, this Court must find not only that the evidence supports a contrary conclusion, but that it *compels* one."[2] Farquharson v. INS, 246 F.3d 1317, 1320 (11th Cir. 2001) (emphasis added); see also 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ."); Kenyeres v. Ashcroft, 123 S. Ct. 1386, 1388 (2003) ("A reviewing court must uphold an administrative determination in an immigration case unless the evidence compels a conclusion to the contrary."); Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) ("To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it."); Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002) ("To conclude that the Board should be reversed, a reviewing Court must find that the record 'not only supports that conclusion, but compels it.'" (quoting INS v. Elias-Zacarias, 502 U.S. 478, 480 n.1 (1992))).

---

[2] Citing Lorisme v. INS, 129 F.3d 1441, 1445 (11th Cir. 1997), the majority opinion does state that "we will not reverse the Board's determination unless 'a reasonable factfinder would have to conclude' that no conviction has been proved." Hence, the majority opinion appears to recognize that we cannot reverse a factual finding of the BIA unless the evidence compels a contrary conclusion. The majority, however, fails to apply this standard, as it reverses the BIA's factual finding by stating only that "we do not think it may be said that this document [from the City Court of Atlanta], marked in this manner, provides clear and convincing evidence of a firearms conviction."

After reviewing the evidence anew and raising arguments not before the BIA,[3] the majority opinion reverses the BIA's finding that Adefemi was convicted of a firearms offense, concluding that the BIA did not base its finding on clear and convincing evidence.[4]    In contrast, I would affirm the BIA's factual finding

[3]  The majority opinion discusses the possibility that Adefemi may have admitted to a lesser violation to avoid the consequences of being convicted of a firearms offense.  Although this is a possible interpretation of the evidence, Adefemi did not raise this argument before this court or the BIA.

[4]  The majority cites Dashto v. INS, 59 F.3d 697, 701 (7th Cir. 1995), and Murphy v. INS, 54 F.3d 605, 610–12 (9th Cir. 1995), as decisions supporting its conclusion that the City Court of Atlanta document was not clear and convincing evidence that Adefemi was convicted of a firearms offense. These decisions, however, are distinguishable.   In Dashto, the court reversed the BIA's determination that the petitioner was convicted of a firearms offense.  The INS attempted to establish Dashto's firearms conviction with a "certified statement of conviction."  Finding that this document was insufficient to establish a firearms conviction, the court stated that "[t]he certified statement of conviction is nothing more than the Clerk of Court's representation as to the underlying court records . . . .   The clerk's function in completing that statement is wholly ministerial, and to the extent the statement is inconsistent with the records she has purported to summarize, it is the records themselves that control . . . . [T]he INS has pointed to no court record which confirms that Dashto in fact used a handgun . . . ."  Dashto, 59 F.3d at 701.  Here, in contrast, the INS has presented a court record indicating Adefemi was charged with a firearms offense and convicted. In addition, the Dashto court stated that "Dashto contended that the certificate was inaccurate, and testified before the Immigration Judge that in actuality, the only weapon used during the robberies was a knife, not a handgun." Id. at 699–700.  Adefemi, however, has never contended that the City Court of Atlanta document was inaccurate or that the weapon described in the document is anything other than a firearm.

In Murphy, the Ninth Circuit concluded that the INS did not prove the petitioner's alienage by clear and convincing evidence.  The INS attempted to demonstrate that the petitioner was not born in the United States Virgin Islands by lack of any birth certificate and the introduction of an unauthenticated INS form.  Addressing the INS form, the court stated that "the unauthenticated [form] merits little (if any) weight, as acknowledged by the BIA.  Murphy disputed the significant information [listed on the form], such as place of birth, [and] names of parents . . . .  Murphy also provided information regarding the source of the information recorded on the form, an INS informant who apparently had some ulterior motive to make statements against Murphy." Murphy, 54 F.3d at 610.  Based on these facts, the Murphy court concluded that the unauthenticated form, combined with other evidence, was insufficient to establish the petitioner's alienage. The majority opinion appears to argue that the Murphy court's decision regarding the unauthenticated INS form supports its decision.  The City Court of Atlanta document, however, is an official court document, not an unauthenticated form of a government agency.  Furthermore, as stated previously, Adefemi has never contested the validity of the information contained in the document.

because it was based on substantial evidence and because the evidence does not compel a contrary conclusion.

First, the BIA based its finding on "'reasonable, substantial, and probative evidence on the record considered as a whole.'" Najjar, 257 F.3d at 1283–84 (quoting Lorisme, 129 F.3d at 1444–45). The INS presented an authenticated document from the City Court of Atlanta to establish Adefemi's firearms conviction.[5] The document indicated that Adefemi was charged only with carrying a concealed firearm. No other offense is mentioned in the section of the document entitled "Offense." The reverse side of the document shows that Adefemi was fined $330 and given a probated sentence. Although this document may support various conclusions about the final disposition of Adefemi's case before the City Court of Atlanta, it is, nonetheless, reasonable and probative evidence supporting the BIA's conclusion that Adefemi was convicted of a firearms offense.

Second, the evidence on the record does not *compel* a conclusion contrary to the BIA's factual finding, regardless of whether the evidence may *support* such a conclusion. See Farquharson, 246 F.3d at 1320. No evidence on the record directly contradicts the BIA's finding that Adefemi was convicted of a firearms

---

[5] The majority opinion labels the document a "traffic ticket" and argues that the INS could have established the firearms conviction through other means. Regardless of what type of document it is, Adefemi has never argued, and the majority opinion does not contend, that the City Court of Atlanta document is not authentic or that it does not fall within 8 U.S.C. § 1229a(c)(3)(B)'s list of documents that can be used to establish a conviction.

25

offense. Furthermore, the majority opinion admits that "it [is] impossible to say, with absolute certainty, that Adefemi was not convicted of a firearms offense. But we think this same ambiguity makes it unreasonable to conclude that the document is clear and convincing evidence of such a conviction." Under our deferential standard of review, however, we may not reverse a factual finding of the BIA simply because we find the evidence to be ambiguous; we may only reverse a factual finding if the evidence compels a contrary conclusion. See id. The majority opinion itself indicates that the evidence does not compel either the conclusion that Adefemi was convicted of a firearms offense or that he was not convicted of a firearms offense, as it finds the evidence ambiguous. Thus, because the evidence does not compel a conclusion contrary to the BIA's finding, under our precedent, this court should not reverse the BIA's factual determination.

Respectfully, therefore, I dissent from Part II of the majority opinion, as I would affirm the BIA's factual determination that Adefemi was convicted of a firearms offense.[6]

---

[6]  I would also reach the remaining issues raised by Adefemi on appeal and affirm the BIA's determination that he is deportable and ineligible for discretionary relief under § 212(c).