[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 06, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-11807

_____

INS No. A35-731-425


ALAN FARQUHARSON,

                                                    Petitioner-Appellant,


versus


U.S. ATTORNEY GENERAL,
 IMMIGRATION AND NATURALIZATION
SERVICE,

                                                    Respondents-Appellees.


_____

Petition for Review of an Order of the
Immigration and Naturalization Service

_____
_____
_

_____

No. 00-13647

_____

D. C.  No. 00-01387 CV-KMM


ALAN FARQUHARSON,

versus

U.S. ATTORNEY GENERAL, John Ashcroft,
DISTRICT DIRECTOR FOR THE  IMMIGRATION
AND NATURALIZATION SERVICE, Robert Wallis,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 6, 2001)**

Before ANDERSON, Chief Judge, CARNES, Circuit Judge, and NANGLE*,
District Judge.

ANDERSON, Chief Judge:

Alan Farquharson petitions this Court to review a deportation order of the

Board of Immigration Appeals ("BIA").  The BIA ordered Farquharson deported to

Jamaica on the grounds of his entry into the United States without submitting to

inspection and his conviction of a controlled substance violation.  The BIA also

held that, as an alien deportable for entry without inspection, Farquharson was

ineligible for an equitable waiver of deportation.  Farquharson filed a petition with

this Court for review of the BIA's decision.  After review, we affirm the BIA's

decision that

Farquharson is deportable.  We also hold that Farquharson's ineligibility for a

*Honorable John F. Nangle, U.S. District Judge for the Eastern District of Missouri, sitting by designation
waiver of deportation under § 212(c) of the INA does not violate his right to equal protection.  Finally, we hold that the BIA did not deny Farquharson's constitutional right to a fundamentally fair hearing.

## I.  BACKGROUND

Alan Farquharson, a native and citizen of Jamaica, was admitted to the United States as a lawful permanent resident on August 23, 1977.  On November 17, 1980, he was flying a plane loaded with marijuana from Jamaica to Florida when he encountered engine trouble and was forced to crash-land about fifty miles from his intended landing site in Florida.  Farquharson testified at his hearing that he radioed for help before the crash and that, after the crash, he and his copilot stayed with the plane for a few minutes, then walked to a nearby highway and attempted to flag down a car for assistance.  A utility worker who witnessed the crash notified the local police, who initiated a search for the plane's occupants.  Farquharson and his copilot were apprehended by a police search party about a half hour after the crash.  Farquharson was convicted of unlawful possession of marijuana in an amount of more than twenty grams.  He was sentenced to five years of probation.

On October 2, 1986, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause charging that Farquharson was deportable because he was convicted of a controlled substance violation and because he entered the United States without inspection. Both grounds for Farquharson's removal arose out of the 1980 incident. The Immigration Judge issued a decision on October 2, 1991, finding Farquharson deportable and finding him ineligible for relief under §§212(c) and 244(a)(2) of the INA.[1] Farquharson appealed, arguing that his flight into Florida was not an "entry" within the meaning of INA § 101(a)(13), so that he could not be deported for "entering" this country without inspection. He further argued that, if he was found deportable for entry without inspection, he should be eligible for equitable relief from deportation under INA § 212(c). The BIA affirmed the Immigration Judge's decision and dismissed Farquharson's appeal on March 20, 2000, finding that he had made an entry into the United States on November 17, 1980. The BIA also affirmed the Immigration Judge's conclusion that Farquharson was ineligible for a waiver of deportation under INA § 212(c).

---

[1] At the time of Farquharson's deportation proceedings, INA § 244(a)(2) gave the Attorney General discretionary authority to order "suspension of deportation" based on certain specified grounds if, inter alia, the alien had been "physically present in the United States for a continuous period of not less than ten years" after becoming deportable. INA § 244(a)(2), 8 U.S.C. § 1254(a)(2) (1990). The Immigration Judge found, and Farquharson does not dispute, that Farquharson was ineligible for § 244(a)(2) relief because he failed to meet the ten-year continuous physical presence requirement. On appeal, Farquharson argues only that he should be eligible for relief under § 212(c).

Farquharson has filed a petition for review with this Court.[2]  He argues that he is not deportable for entry without inspection because he did not make an "entry" into the United States within the meaning of the immigration statute.  He also argues in each petition that even if he is deportable, he is entitled to apply for a waiver of deportation under former INA § 212(c).

## II.  DISCUSSION

### A.  Farquharson's Deportability

### 1.  Jurisdiction

Before addressing the merits of Farquharson's appeal, we must consider whether we have jurisdiction to hear his petition.  Section 106 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1105(a), as amended by section 309 of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA") governs this Court's jurisdiction.  Although most of IIRIRA's provisions apply only to proceedings commenced on or after April 1, 1997,

---

[2] After filing this petition, Farquharson also filed a petition with the district court for a writ of habeas corpus, 28 U.S.C. § 2241, in which he raised the same arguments he raised in his petition for review with this Court.  The district court dismissed Farquharson's habeas petition for lack of subject matter jurisdiction because his petition for direct review was pending before this Court.  Farquharson appealed from the judgment of the district court, and that appeal (No. 00-13647) was consolidated with his petition for review (No. 00-11807).  In addressing Farquharson's petition for review we reach all of the issues raised in Farquharson's habeas petition; therefore, we dismiss as moot Farquharson's appeal of the district court's dismissal.

IIRIRA adopted transitional rules which apply in the case of an alien who is in exclusion or deportation proceedings before April 1, 1997, where the final order is entered after October 31, 1996. See Alanis-Bustamante v. Reno, 201 F.3d 1303, 1306 (11th Cir. 2000). IIRIRA's transitional rules apply to Farquharson because his deportation proceedings were commenced before April 1, 1997, and the final deportation order was entered after October 31, 1996.

IIRIRA's transitional rules provide that "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense" described in specific enumerated sections. IIRIRA §309(c)(4)(G), reprinted in 8 U.S.C. § 1101 note. Notwithstanding this restriction, this Court retains jurisdiction to determine whether an alien is deportable under the immigration statute. See Lettman v. Reno, 168 F.3d 463, 465 (11th Cir. 1999). Because judicial review is limited by statutory conditions, courts retain jurisdiction to determine whether those conditions exist. See id. As explained in Lettman, this determination involves considering whether the petitioner is (1) an alien (2) deportable (3) by reason of a criminal offense listed in the statute. See id. We thus have jurisdiction over Farquharson's petition for direct review to determine whether the BIA correctly concluded that Farquharson is deportable.

## 2. Standard of Review

On the merits, the Immigration Judge found that Farquharson was deportable both for his controlled substance conviction and for making an entry without inspection. Each of these was a statutory basis for deportation. See 8 U.S.C. §1251(a)(2), (11) (1990).[3] Farquharson argued that he did not make an "entry" into the United States within the meaning of the immigration statute, and therefore that he was not deportable on that basis. In dismissing Farquharson's appeal, the BIA rejected this argument and affirmed that Farquharson was deportable for entry without inspection. In our review of the BIA's decision, we review the BIA's statutory interpretation de novo, but we defer to the BIA's interpretation if it is reasonable. See Asencio v. INS, 37 F.3d 614, 616 (11th Cir. 1994). We review the BIA's factual determinations under the substantial evidence test. See Lorisme v. INS, 129 F.3d 1441, 1444 (11th Cir. 1997). To reverse a factual finding by the BIA, this Court must find not only that the evidence supports a contrary

_____

[3] Throughout this opinion, unless otherwise indicated, we refer to the edition of the United States Code applicable to Farquharson. The Immigration Act of 1990, Pub. L. 101-649, 104 Stat. 4978 (1990), renumbered and in some instances revised the grounds upon which an alien may be deported. The Act provided that these amendments did not apply to deportation proceedings for which notice had been provided to the alien before March 1, 1991. The INS gave notice to Farquharson on October 2, 1986; thus, the 1990 pre-amendment statute applies to Farquharson. In that statute, section 1251(a)(2) provided for deportation of any alien who "entered the United States without inspection or at any time or place other than as designated by the Attorney General. . . ." Section 1251(a)(11) made deportable any alien who "has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marijuana."

7

conclusion, but that it compels one. INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1, 112 S. Ct. 812, 815 n.1, 117 L. Ed. 2d 38 (1992).

3.  Merits

The BIA has established that an entry within the meaning of 8 U.S.C. §1101(a)(13) requires: (1) a crossing into the territorial limits of the United States; (2) (a) inspection and admission by an immigration officer, or (b) actual and intentional evasion of inspection at the nearest inspection point; and (3) freedom from official restraint. See Matter of Z-, 20 I. & N. Dec. 707, 708 (BIA 1993). Farquharson argues that the BIA erred in finding that he entered without inspection when he crash-landed in Florida in November 1980 because he did not intentionally evade inspection and because he was not free from official restraint.

Farquharson first challenges the Immigration Judge's factual finding, affirmed by the BIA, that he intentionally evaded inspection. Farquharson argues that the evidence in this case shows that he did not intentionally evade inspection. Evasion of inspection occurs when an alien avoids the ordinary route to the nearest point of inspection or otherwise attempts to circumvent the normal inspection process. See Cheng v. INS, 534 F.2d 1018, 1019 (2nd Cir. 1976). Even a temporary evasion of the inspection process suffices to produce an entry. U.S. v.

8

Kavazanjian, 623 F.2d 730, 739 (1st Cir. 1980) (stating that aliens who fled from a U.S. airport and subsequently applied for political asylum at a regional INS office effected an "entry"). Farquharson's own testimony, corroborated by his copilot, indicates that he entered the United States flying a plane which was involved in a drug smuggling operation. He did not have proper travel documents, and he had not filed the customary flight plan before his trip. He did not intend to land at an airport, but at a private landing strip where the drugs would be disbursed. When problems occurred with the plane, he landed in a field. A few minutes after landing, he and his copilot left the plane, and there is no evidence to suggest that they left en route to the nearest point of inspection. They surrendered a short time later to a police search party. The fact that Farquharson was smuggling drugs into the United States shows that he had no intention of submitting himself for immigration inspection. His conduct after landing is consistent with this intent to evade inspection. We conclude that substantial record evidence supports the finding that Farquharson intentionally evaded inspection.

Farquharson next argues that he was not free of official restraint on his entry into the United States because his plane was under surveillance by federal officials. In support of this argument, Farquharson cites Matter of Pierre, 14 I. & N. Dec. 467 (BIA 1973), for the proposition that an alien has not entered the United States

9

within the meaning of the immigration statute unless he is free from both actual and constructive restraint.  See id. at 469.  As in Matter of Pierre, constructive restraint may consist of surveillance which, though unknown to the alien, causes the alien to lack the freedom "to go at large and mix with the population."  Id.  In this case, however, the record does not show that Farquharson was under surveillance at the time of his entry.[4]  The BIA noted that there was record evidence suggesting that federal law enforcement officers had monitored Farquharson's movements on prior occasions and had placed Farquharson's plane on a U.S. Customs"lookout" sheet because he was suspected of being a drug dealer.  However, we agree with the BIA that this evidence is insufficient to indicate that Farquharson was under surveillance, and therefore under constructive restraint, when he landed his plane in Florida in November 1980.  To the contrary, the record establishes that Farquharson's landing was witnessed only by a private individual – a utility worker – and that Farquharson was not located by officials until approximately one-half hour after he landed.

In view of the foregoing, we affirm the BIA's conclusion that Farquharson intentionally evaded inspection and that he was free from official restraint when he

---

[4] Because we affirm the BIA's finding that Farquharson was not under surveillance, we need not address the legal significance vel non if he had been under surveillance in this context.

entered the United States on November 17, 1980.  We thus affirm the BIA's

decision that Farquharson is deportable for making an entry without inspection.

See 8 U.S.C. § 1251(a)(2) (1990).

### B.  Farquharson's Eligibility for Relief Under § 212(c)

### 1.  Jurisdiction

Even if he is deportable under the statute, Farquharson argues that the BIA

unconstitutionally interpreted § 212(c) of the INA to deny him relief from

deportation that is available to similarly situated aliens.  He argues that, to preserve

his right to equal protection, § 212(c) must be construed to permit him to apply for

a waiver.  The government concedes, and we agree, that our jurisdiction extends to

review of substantial constitutional questions raised by a petitioner on direct

review.  See Richardson v. Reno, 180 F.3d 1311, 1316 n.5 (11th Cir. 1999)

(noting that INA § 242(a)(2)(C), like IIRIRA § 309(c)(4)(G), "does not foreclose

constitutional challenges to the statute itself or other substantial constitutional

issues from being raised in the court of appeals") ("Richardson II"), cert. denied,

--- U.S. ----, 120 S. Ct. 1529, 146 L. Ed. 2d 345 (2000).  Richardson II establishes

that, like the Seventh Circuit, we will consider such claims on direct review.  See

id.; LaGuerre v. Reno, 164 F.3d 1035, 1040 (7th Cir. 1998) (dismissing a § 2241

11

petition for lack of jurisdiction but noting that review of substantial constitutional claims had been available in a petition for direct review), cert. denied, 528 U.S. 1153, 120 S. Ct. 1157, 145 L. Ed. 2d 1069 (2000).  See also Galindo-Delvalle v. Attorney Gen., 213 F.3d 594, 598 (stating that, in Richardson II, "we have determined that, despite INA § 242(a)(2)(C), we retain jurisdiction to evaluate constitutional challenges to the INA," but finding that the petitioner lacked standing to raise constitutional issues).[5]  As discussed below, there is a split among the circuits with respect to the equal protection issue raised by Farquharson; in this light, we conclude that his constitutional question is substantial.  We therefore resolve Farquharson's constitutional challenge in this direct appeal.

2.  History of § 212(c)

---

[5] In LaGuerre v. Reno, the Seventh Circuit noted that "[i]f, as we believe in agreement with the government, the deportee can seek review of constitutional issues in the court of appeals directly, as under the prior regime governing judicial review of deportation, then the layering of judicial review proposed by the petitioners is avoided, judicial review is curtailed as Congress intended, but enough of a safety valve is left to enable judicial correction of bizarre miscarriages of justice."  164 F.3d at 1040.

Our conclusion that we have jurisdiction to hear Farquharson's substantial constitutional claim on direct review provides such a safety valve and confirms our observation, in Richardson II, that even without § 2241 jurisdiction over an alien's claims, an alien may still receive substantial judicial review.  See Richardson II, 180 F.3d at 1316 (stating that "Lettman establishes that, even when an alien faces a putative bar to judicial review like IIRIRA § 309(c)(4)(G), the alien still receives substantial judicial review").

The current circuit split was foreshadowed by a history of differing interpretations of § 212(c). Section 212(c) of the INA grants the Attorney General discretion to admit permanent resident aliens who temporarily travel abroad and seek readmission, even if they are otherwise subject to exclusion under the statute.[6] Although § 212(c) by its literal terms offers relief only from exclusion, during the last four decades the INS has permitted aliens subject to deportation to apply for §212(c) relief. This expansion was justified under the theory that, if the INS allowed a resident alien to reenter the country despite his excludability and then initiated deportation proceedings, the alien should not be placed in a worse position than if he had been excluded in the first place. See Matter of G- A-, 7 I. & N. Dec. 274 (BIA 1956); Matter of S-, 6 I. & N. Dec. 392 (BIA 1954; Att'y Gen.1955).

This extension, however, produced inequities in its application. While one resident alien who became deportable and then voluntarily left the country became eligible for waiver upon reentry, another alien who was deportable for the same reason but never left the country had no recourse. Finding this distinction "not rationally related to any legitimate purpose of the statute," the Second Circuit

---

[6] The edition of § 212(c) applicable to Farquharson provided that "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to" selected statutory grounds for exclusion. 8 U.S.C. § 1182(c) (1990).

13

struck it down as violating the Due Process Clause. <u>Francis v. INS</u>, 532 F.2d 268, 272 (2d Cir. 1976). The BIA adopted the reasoning of <u>Francis</u> and extended § 212(c) relief to deportable aliens regardless of whether they had left the United States after committing the act rendering them deportable. <u>See</u> <u>Matter of Silva</u>, 16 I. & N. Dec. 26, 30 (BIA 1976). Under the rationale of <u>Francis</u> and <u>Silva</u>, therefore, deportable aliens could receive § 212(c) exclusion-type relief. However, because the basis for the extension of relief was to equalize the treatment of aliens who were deportable versus excludable on equivalent grounds, the BIA extended § 212(c) relief only to aliens whose deportability was based on a ground for which a comparable ground for exclusion existed. <u>See</u> <u>Matter of Wadud</u>, 19 I. & N. Dec. 182, 184 (BIA 1984); <u>Matter of Granados</u>, 16 I. & N. Dec. 726, 728 (BIA 1979).

In 1990, the BIA departed from its precedent to hold that § 212(c) relief was available to all aliens facing deportation (unless the ground was one specifically excluded in 212(c)). <u>See</u> <u>Matter of Hernandez-Casillas</u>, 20 I. & N. Dec. 262, 268 (BIA 1990). This unexpected liberality was soon curtailed, however, as the Attorney General reversed the BIA,[7] and the reversal was affirmed by the Fifth

---

[7] Congress has vested in the Attorney General the authority to decide legal questions arising under the immigration laws. <u>See</u> 8 U.S.C. § 1103(a). The Attorney General has delegated this function to the Board; however, the Attorney General retains the authority to review final decisions of the BIA, either upon the Attorney General's initiative or by request. <u>See</u> 8 C.F.R. §3.1(h).

Circuit.  See In re Hernandez- Casillas, 20 I. & N. Dec. 262, 280-93 (BIA 1991), aff'd mem., 983 F.2d 231 (5th Cir. 1993).  The issue in Hernandez-Casillas, as in this case, was whether § 212(c) relief should be available to aliens deportable on the ground of entry without inspection.  See id. at 280.  Because there is no comparable ground for exclusion, the Attorney General concluded that § 212(c) relief should not be available but that, pursuant to the BIA's former precedent, a § 212(c) waiver is available only to aliens whose deportability was based on a ground for which a comparable ground for exclusion exists.  See id. at 291-92.

The Seventh Circuit addressed this precise issue in Leal-Rodriguez v. INS, 990 F.2d 939 (7th Cir. 1993), and agreed with Hernandez-Casillas that a deportable alien's ineligibility for a § 212(c) waiver does not violate his right to equal protection.  See id. at 952.  However, the Second Circuit has held that a § 212(c) waiver is available in a deportation based on entry without inspection, despite the lack of an analogous ground for exclusion.  See Bedoya-Valencia v. INS, 6 F.3d 891, 897 (2d Cir. 1993) (extending the Francis rule to hold that an alien deportable for illegal entry was not rendered ineligible for a § 212(c) waiver by his illegal entry, where he was also deportable for a drug conviction that did not render him ineligible for the waiver).

15

Other circuits, including this Circuit, have addressed the issue in the context of a firearms violation (a deportation ground for which no analogous ground for exclusion exists), and have uniformly followed the Attorney General's lead, concluding that a § 212(c) waiver is not available in deportations for firearms violations because there is no analogous ground for exclusion.  See Gjonaj v. INS, 47 F.3d 824, 827 (6th Cir. 1995); Rodriguez-Padron v. INS, 13 F.3d 1455, 1460-61 (11th Cir. 1994); Chow v. INS, 12 F.3d 34, 38 (5th Cir. 1993); Rodriguez v. INS, 9 F.3d 408, 412 (5th Cir. 1993); Campos v. INS, 961 F.2d 309, 316-17 (1st Cir. 1992); Cabasug v. INS, 847 F.2d 1321, 1327 (9th Cir. 1988).  See also Matter of Montenegro, 20 I. & N. Dec. 602, 605 (BIA 1992) (stating that under Hernandez-Casillas an alien who is deportable for a firearms conviction is ineligible for §212(c) relief because there is no analogous ground for exclusion).

3.  Standard of Review

As in Hernandez-Casillas, Farquharson is deportable on the statutory ground of entry without inspection, for which there is no analogous ground for exclusion. Following the Attorney General's rule in Hernandez-Casillas, the Immigration Judge decided, and the BIA affirmed, that Farquharson is ineligible for a § 212(c) waiver because there is no ground for exclusion comparable to the entry without

inspection ground for deportation.  Notwithstanding <u>Hernandez-Casillas</u>,

Farquharson argues that denying him the opportunity to pursue a § 212(c) waiver

violates his right to equal protection of the laws.  He argues that the BIA

unconstitutionally interpreted the statute to deny him relief from deportation that is

available to similarly situated lawful permanent residents.  Specifically, he argues

that it is irrational to deny him a § 212(c) waiver on illegal entry grounds, when his

more serious ground for deportation – the drug conviction – would not disqualify

him for § 212(c) relief.  Because Farquharson raises solely a question of law, our

review is plenary.  <u>See</u> <u>Ardestani v. INS</u>, 904 F.2d 1505, 1508 (11th Cir. 1990),

<u>aff'd</u>, 502 U.S. 129, 112 S. Ct. 515, 116 L.Ed.2d 496 (1991).  A statutory

distinction such as that challenged by Farquharson is evaluated under the minimal

scrutiny test, and will survive an equal protection challenge if the classification

drawn by the statute is rationally related to a legitimate state interest.  <u>City of</u>

<u>Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 440, 105 S. Ct. 3249, 3254,

87 L. Ed. 2d 313 (1985).


4.  Merits

Farquharson argues that the Equal Protection Clause mandates that he be

eligible for § 212(c) relief even though no analogous ground exists for exclusion.

17

In Hernandez-Casillas, the Attorney General responded to a challenge by a petitioner who argued, like Farquharson, that he should be eligible for a § 212(c) waiver although he was deportable for entry without inspection. See 20 I. & N. Dec. at 268. In that case, the petitioner argued that because he admitted to a more serious offense – smuggling aliens into the United States – which would not render him ineligible for the waiver, he should remain eligible for the waiver despite his illegal entry. See id. The Attorney General rejected this argument, reasoning that the equal protection concerns articulated in Francis and Silva were satisfied by making the § 212(c) waiver available in deportation cases for all grounds that would qualify for the waiver in exclusion cases. See id. at 287-88. In Francis and Silva, where deportable aliens were denied waivers on grounds that would not have rendered them ineligible for a waiver of exclusion, the denial turned on the "irrelevant circumstance" that the petitioners had temporarily left the United States, while in the case of a deportation for entry without inspection, the denial was based on the relevant circumstance of the "illegal nature of [the] reentry." See id. at 288. In this light, the Attorney General emphatically concluded that equal protection was satisfied by the extension of the § 212(c) waiver granted by Francis and Silva – i.e., in situations where an analogous ground existed for exclusion – and that a further extension was not constitutionally required. See id. (stating that

18

"[u]nder no plausible understanding of equal protection principles must discretionary relief be made available in deportation cases where the ground for deportation could not be . . . asserted at all in an exclusion case"). Absent a constitutional justification, the Attorney General refused to depart further from the statutory framework which expressly provided different grounds for suspension of deportation versus a waiver of exclusion. See id. at 289.

We find this reasoning convincing. We have no difficulty in concluding that a denial of eligibility for § 212(c) relief based on illegal entry is rationally related to a legitimate government interest. It is reasonable that the government would decline to offer a waiver to aliens deportable for entry without inspection, since illegal entry violations directly and fundamentally undermine the enforcement efforts of the INS. See Leal-Rodriquez, 990 F.2d at 946 (stating that "the inspection process is critical to the integrity of the immigration system" and noting that Congress viewed entry without inspection as "one of 'the more important grounds for deportation'") (citations omitted). Further, as the First Circuit observed, § 212(c) has already been "stretched beyond its language" in response to equal protection concerns, and further judicial redrafting would serve only to pull the statute further from its moorings in the legislative will. Campos, 961 F.2d at 316. The Seventh Circuit cited Campos with approval, and refused to extend § 212(c) relief to an alien deportable for entry without inspection,

19

stating that no equal protection justification exists for further judicial extension of the statute.  See Leal-Rodriquez, 990 F.2d at 952.  We agree with Leal-Rodriquez, and we hold that the BIA's decision that Farquharson is ineligible for a waiver of deportation under § 212(c) of the INA does not violate Farquharson's right to equal protection.[8]

## III.  CONCLUSION

For the foregoing reasons, in appeal No. 00-11807, we affirm the Board of Immigration Appeals' final order of deportation.  The appeal from the district court's judgment dismissing the § 2241 petition, No. 00-13647, is dismissed as moot.[9]

---

[8] Farquharson suggests in conclusory fashion that he is making an argument based on statutory construction, as well as his equal protection argument. However, we have carefully examined all of Farquharson's briefs on appeal, and we conclude that the only specific argument which Farquharson makes is that it is irrational to deny him eligibility for a §212(c) waiver on the basis of the illegal entry ground for deportation, when his more serious ground for deportation – the drug conviction – would not disqualify him for §212(c) relief.  The argument is an equal protection argument.  Indeed, the repeated refrain in Farquharson's briefs is that such denial is "irrational and unconstitutional."  Notwithstanding his conclusory assertion at one point in one of the briefs that he is also asserting a statutory challenge, we doubt that a statutory challenge is presented here.  And to the extent that there might be a statutory challenge, it is indistinguishable from the equal protection argument which we have rejected, and therefore we deem any statutory argument moot and decline to address it.

Farquharson's suggestion that the immigration proceedings against him were fundamentally unfair does not on these facts constitute a substantial constitutional challenge. Indeed, his arguments in this regard border on the frivolous and we decline to address them.

[9] As discussed supra note 3, Farquharson filed a habeas petition with the district court after filing his petition for direct review with this Court, raising the same arguments in each petition.  Because we reject his arguments in our direct review, we dismiss as moot his appeal from the district court's dismissal of his habeas petition.

AFFIRMED IN PART and DISMISSED AS MOOT IN PART.