[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 29, 2004
THOMAS K. KAHN
CLERK

_____

No. 00-15783

_____

Agency Docket No. A90-358-688

ALBERT ADEFEMI,

Petitioner-Appellant,

versus

JOHN ASHCROFT, as Attorney General of U.S.,
Ms. ROSEMARY MELVILLE, as the District
Director for INS,
UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE,

Respondents-Appellees.

_____

Petition for Review of an Order of
the Board of Immigration Appeals

_____

**(January 29, 2004)**

Before BARKETT and KRAVITCH, Circuit Judges, and FULLAM*, District
Judge.

BARKETT, Circuit Judge:

We vacate and withdraw the previous opinion dated June 30, 2003, 335 F.3d

1269 (11th Cir. 2003), and substitute the following opinion.

Albert Adefemi, a citizen of Nigeria, petitions for review of a decision of the

Board of Immigration Appeals, challenging its determination that the Immigration

and Naturalization Service ("INS") presented sufficient evidence to demonstrate

that he could be deported on the basis of a firearms offense.

After entering the United States in 1977 without inspection, Adefemi

became a lawful temporary resident on August 17, 1987 and a permanent resident

on March 20, 1989. In 1993, the INS initiated deportation proceedings on the basis

of two theft offenses of which Adefemi was allegedly convicted in 1991. Adefemi

did not contest his deportability, applying instead for discretionary relief under

section 212(c) of the Immigration and Nationality Act ("INA"), as amended, 8

U.S.C. § 1182(c) (repealed 1996). At that time, section 212(c) authorized the

Attorney General to determine whether equitable considerations, such as a family

in the United States or a negligible criminal record, favored sparing an immigrant

the hardship of deportation. Acting on the Attorney General's authority, the same

---

*Honorable John Fullam, United States District Judge for the Eastern District of Pennsylvania,
sitting by designation.

2

immigration judges ("IJs") who preside over deportation proceedings also considered applications for discretionary waivers under section 212(c).

Over the course of seven years, the INS twice amended its charges against Adefemi, eventually alleging that he was deportable on the basis of a 1991 firearms conviction as well as the theft offenses. Adefemi was found deportable on all grounds. An IJ deemed the INS to have established the firearms conviction "by evidence which is clear, convincing and unequivocal." Oral Decision of the Immigration Judge, Nov. 10, 1999, at 8. The judge then determined that Adefemi was ineligible for a waiver of deportation under Section 212(c) because controlling administrative precedent limited such relief to persons who are deportable for a reason that would also warrant an alien's "exclusion" prior to admission into the United States. Because Adefemi's firearms offense does not have an analogue in the exclusion context, the court determined that it "must" find Adefemi ineligible for discretionary relief under section 212(c) because of the firearms offense. Id. at 11.

Adefemi appealed and in 2000 was denied relief by the Board of Immigration Appeals ("BIA" or "Board"), which had earlier issued decisions addressing other aspects of the INS's case in 1997 and 1999. Like the IJ, the Board found that Adefemi was deportable on the basis of the firearms offense and

3

ineligible for section 212(c) relief as a result. Adefemi filed a petition for review with this Court, and a three-judge panel granted his motion for a stay of deportation on March 5, 2001. He now raises a range of claims pertaining to his lengthy administrative proceedings.

## DISCUSSION

The upheaval in immigration law effected by two pieces of 1996 legislation, the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214, and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, has raised numerous and ponderous questions regarding both the substantive law to be applied in immigration proceedings and the extent of federal judicial authority to review determinations made by administrative tribunals. One particularly vexing matter has been the extent to which convictions for certain statutorily enumerated crimes operate as complete bars to discretionary relief from deportation. See, e.g., INS v. St. Cyr, 533 U.S. 289 (2001). In the case before us, the parties agreed at oral argument that a remand to allow Adefemi to apply for discretionary relief will be appropriate should we decide he is not deportable on the basis of the asserted firearms offense.[1] We therefore commence with the question of our jurisdiction to

---

[1] Unlike the firearms offense, the theft offenses of which the Board also found Adefemi to have been convicted, even if now classified as "aggravated felonies," see Mohammed v. Ashcroft, 261 F.3d 1244, 1250 (11th Cir. 2001), do not prevent him from applying for section 212(c) relief

4

hear Adefemi's challenge to this discrete aspect of his case.

## I.  JURISDICTION

Because deportation proceedings against Adefemi commenced before April 1, 1997, and a final deportation order was entered more than thirty days after September 30, 1996, our jurisdiction is governed by former Section 106(a) of the INA, 8 U.SC. § 1105a (1996), as amended by the transitional rules set forth in Section 309(c) of the IIRIRA (reprinted in 8 U.S.C.A. § 1101 (historical notes)). See Al Najjar v. Ashcroft, 257 F.3d 1262, 1276-77 (11th Cir.), reh'g en banc denied, 275 F.3d 1085 (2001).  The jurisdiction of the courts of appeals under IIRIRA is triggered by the entrance of a "final order" of deportation.  See IIRIRA, § 309(c)(4)(C) (providing for petition for review to be filed not later than 30 days after date of "final order"); 8 U.S.C. § 1105a(a)(1) (referring to review of "final deportation order").  A deportation order becomes final "upon dismissal of an appeal by the Board."  8 C.F.R. § 241.31 (2002).  Because the Board did not conclusively dismiss Adefemi's appeal until its October 4, 2000, decision, its

from deportation.  See St. Cyr, 533 U.S. at 326 (holding that 1996 abolition of section 212(c) relief is not retroactively applicable to aliens who would have been eligible for such relief at time they entered guilty pleas); Mayers v. INS, 175 F.3d 1289, 1304 (11th Cir. 1999) (holding separate statutory limitation on section 212(c) relief for aggravated felons inapplicable to cases pending as of limitation's enactment).

earlier decisions in 1997 and 1999 were not final orders.[2] By filing his petition for review on November 2, 2000, 29 days after the Board dismissed his appeal, Adefemi satisfied the 30-day timely filing requirement set forth in the statute. IIRIRA, § 309(c)(4)(C).

The transitional rules provide that:

> there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act). . . .

IIRIRA § 309(c)(4)(G). At the time of IIRIRA's enactment, one of the statutes incorporated by this transitional rule directed as follows:

---

[2]The INS mistakenly asserts in its brief that Adefemi cannot challenge determinations reached in the 1997 and 1999 orders because he failed to file timely petitions for review with this Court. This argument fails to acknowledge the Board's own recognition in those decisions that further administrative proceedings would be necessary to determine Adefemi's immigration status and his entitlement to discretionary relief. Cf. Del Pilar v. U.S. Attorney General, 326 F.3d 1154, 1156 (11th Cir. 2003) (holding that Board decision finding removable alien ineligible for discretionary relief, and remanding for sole purpose of allowing alien to designate country of removal, was "final order" because it "amounted to an order that [the alien] be removed"). The Board's 1997 decision stated that the "appeal is dismissed," but it expressly invited Adefemi to move to reopen proceedings on a specific basis. Decision of the Board of Immigration Appeals, Mar. 25, 1997. The Board later granted the motion and remanded to the IJ "for further proceedings consistent with this order." Decision of the Board of Immigration Appeals, Oct. 16, 1998. In its 1999 decision, the Board made no reference at all to dismissal but again "remanded to the Immigration Judge in order that the respondent may be afforded an opportunity to apply for section 212(c) relief." Decision of the Board of Immigration Appeals, Jul. 12, 1999. The availability of section 212(c) relief was thereafter placed in question by the INS's filing of a new charge of deportability premised on the alleged firearms conviction. Given the nature of the Board's 1997 and 1999 decisions, Adefemi's litigation of his case before the administrative tribunals reflects an appropriate effort to exhaust administrative remedies, not, as the INS contends in its brief, a failure to comply with the timely filing requirement.

6

Any alien who at any time after entry is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of Title 18) in violation of any law is deportable.

INA § 241(a)(2)(C), 8 U.S.C. § 1251(a)(2)(C) (1996).

It is by now well established that we retain jurisdiction in such cases to the extent necessary to review whether the statutory prerequisites of Section 309 apply. Farquharson v. U.S. Attorney Gen., 246 F.3d 1317, 1320 (11th Cir. 2001) (citing Lettman v. Reno, 168 F.3d 463, 465 (11th Cir. 1999)); cf. Calcano-Martinez v. INS, 533 U.S. 348, 350 n.2 (2001) (noting government's concession that "the courts of appeals have the power to hear petitions challenging the factual determinations thought to trigger [a substantially identical] jurisdiction-stripping provision"). We therefore have jurisdiction to determine whether Adefemi is (1) an alien who is (2) deportable (3) by reason of a firearms offense. Farquharson, 246 F.3d at 1320.

The transitional rule set forth in Section 309(c)(4)(G) creates a certain ambiguity as to when an alien is deportable "by reason of a firearms offense." Whereas the transitional rule refers generally to aliens "deportable by reason of

7

having <u>committed</u>" a range of crimes, the underlying statute which it incorporates by reference makes aliens "deportable" only when they have been "<u>convicted</u> under any law" of a qualifying firearms offense. We have previously reasoned, in examining comparable immigration provisions structured in the same fashion, that the meaning of the term "deportable" as used in the provision limiting our jurisdiction must be derived from the underlying statute's specification of how an alien becomes deportable. <u>Fernandez-Bernal v. Attorney General</u>, 257 F.3d 1304, 1308-09 (11th Cir. 2001) (construing provisions relating to controlled substance offenses). That is, we have jurisdiction to determine whether Adefemi is deportable because he has been "convicted under any law" of a qualifying firearms offense. 8 U.S.C. § 1251(a)(2)(C).

Our jurisdictional inquiry thus merges with the merits of Adefemi's challenge, which rests on his assertion that the INS failed to prove a qualifying firearms conviction by sufficient evidence. We therefore proceed to the merits on the understanding that we have jurisdiction to grant relief if the government failed to prove that Adefemi was convicted of a firearms offense.

II. SUFFICIENCY OF EVIDENCE DEMONSTRATING CONVICTION

In the administrative proceedings under review, the INS relied exclusively on a single piece of evidence in support of its charge that Adefemi was deportable

8

on the basis of a firearms conviction. This was a two-sided, preprinted document that would be colloquially termed a traffic "ticket." On the front appears a uniform citation form used to charge drivers with moving violations. On the reverse is boilerplate language for use in recording several types of action taken in the City Court of Atlanta, such as the receipt of a plea or the imposition of sentence.

The IJ determined that "Respondent waived a trial by jury, pled guilty, and was convicted and directed to pay a fine of $330, [or in] default of such payment be confined for a term of 12 months." Oral Decision of the Immigration Judge, Nov. 10, 1999, at 3. The Board affirmed, but unlike the IJ, was silent as to whether Adefemi had pled guilty. In the proceedings before these tribunals, the only evidence presented by the INS was this two-sided document. Although Adefemi raises several challenges to the Board's decision, his central contention is that this ticket, the sole piece of evidence against him considered by the IJ, was insufficient to demonstrate his deportability on the basis of a firearms conviction. See Petitioner's Supplemental Brief at 20-26.[3]

Whether a conviction has been sustained is a question of fact on which we defer to the Board if its determination is "supported by reasonable, substantial, and

---

[3]Adefemi also argues the INS should have been estopped from seeking to deport him, some six years after the commencement of proceedings, on the basis of an offense alleged to have occurred two years before proceedings began. We need not reach this claim in light of our resolution of other issues in this case.

probative evidence on the record considered as a whole." 8 U.S.C. 1105a(a)(4) (repealed 1996) (applicable to this case under IIRIRA § 309(c)(4)(1)(A)). Under this "substantial evidence" standard, we will not reverse the Board's determination unless "a reasonable factfinder would have to conclude" that no conviction has been proved. See Lorisme v. INS, 129 F.3d 1441, 1445 (11th Cir. 1997) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).

Although our own review is deferential, the INS must prove an alien's deportability by "clear and convincing evidence." 8 U.S.C. § 1229a(c)(3)(A); Woodby v. INS, 385 U.S. 276, 286 (1966) (requiring "clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true"). As a court of review, we are well acquainted with the task of integrating our own deferential review of factual determinations with the heightened burden of proof borne by certain parties to litigation. For example, when a defendant in a criminal case argues on appeal that the evidence was insufficient to convict him, we ask whether a reasonable trier of fact, after viewing the evidence in the light most favorable to the government, could find that the defendant's guilt was established beyond a reasonable doubt. See, e.g., United States v. Miles, 290 F.3d 1341, 1355 (11th Cir.), cert. denied, 123 S. Ct. 707 (2002). Although this standard safeguards the role of the trier of fact, it also assures that "application of the beyond-a-

reasonable-doubt standard to the evidence is not irretrievably committed to jury discretion." Jackson v. Virginia, 443 U.S. 307, 318 n.10 (1979).

Here, our approach is of a similar form but different content: we ask whether a reasonable fact finder could conclude that the government has shown Adefemi deportable by clear and convincing evidence. Hence we must determine whether the INS's evidence could justify the finding of a conviction by clear and convincing evidence. Unless the record compels us to conclude that the INS failed to meet its burden, we must affirm the decision below. If, however, no reasonable fact finder could be persuaded that the INS made the necessary showing, we must reverse.[4] The Board found this standard satisfied by the two-sided, preprinted form

[4]The dissent fails to recognize the necessity of integrating our deferential appellate review with the INS's demanding burden of showing deportability by clear and convincing evidence. While it is true, as the dissent stresses, that this Court will not reverse a factual finding of the Board unless the evidence compels a contrary determination, the question in this case is whether the record compels us to conclude that the INS failed to meet its burden. Our review remains highly deferential, but the particular finding we are reviewing requires more from the record than an ordinary fact. We must see some evidence -- any reasonable evidence -- that the government met its burden.

Prior to this case, the Eleventh Circuit has not directly addressed the application of substantial evidence review to a conviction, which the INS must show by clear and convincing evidence. However, several other circuits have reached conclusions consistent with our application of the substantial evidence test. In Sandoval v. INS, 240 F.3d 577 (7th Cir. 2001), the Seventh Circuit pointed to the ambiguous effect of a subsequent change in the petitioner's sentence and concluded that "the INS did not prove by clear and convincing evidence that Sandoval was convicted of possession of more than thirty grams of marijuana." Id. at 583. Similarly, in Cortez-Acosta v. INS, 234 F.3d 476 (9th Cir. 2000), the Ninth Circuit reversed an order of deportation because the petitioner's admission of culpability in alien smuggling was too ambiguous to meet the "clear and convincing" burden. In discussing the standards of review, the court noted that "although we review for reasonable, substantial, and probative evidence in the record as a whole, our review examines whether the INS has successfully carried this heavy burden of clear, unequivocal and convincing evidence." Id. at 481 (citations omitted). See also

relied upon by the INS as the exclusive evidence of a firearms conviction.[5]

In order to review this determination, we must examine this somewhat inscrutable document carefully. We begin with the front side, on which appears a uniform citation form. On a blank space next to the word "Offense," a handwritten entry states that Adefemi, in violation of Section 16-11-126 of the Georgia Code, "had a 22 cal RG10 in console between seats." Although Ga. Code Ann. 16-11-126 proscribes the carrying of a range of concealed weapons other than firearms, Adefemi does not contend that a "22 cal RG10" is anything other than a firearm. Hence the citation form, which was signed by an arresting officer, alleges unlawful possession and/or concealment of a firearm.

The BIA referred to the document's reverse side as a "criminal court certificate of disposition," but that phrase does not appear anywhere on the copy

---

Murphy v. INS, 54 F.3d 605, 612 (9th Cir. 1995) ("Because the BIA gave significant weight to inherently unreliable evidence and shifted the burden of persuasion to Murphy, it inappropriately concluded that the government had met its burden of proving alienage by clear and convincing evidence. Because the BIA's determination is not based on substantial evidence in the record as a whole, we hereby grant Murphy's petition. . . . ").

[5]We note that Adefemi made several statements about the circumstances surrounding this arrest in the course of his 212(c) hearing before the INS had amended the charges to include the firearms offense. In line with BIA precedent, neither the IJ nor the Board considered this testimony in determining whether there had been a conviction. See In Re Pichardo, 21 I&N Dec. 330, 334-35 (BIA 1996) (holding that the INS had failed to meet its burden of showing deportability under INA § 241(a)(2)(C) when the certificate of disposition did not specify the precise offense of conviction despite the respondent's admission that the incident involved a firearm). In this appeal, the INS concedes that the BIA "[a]dher[ed] to its precedent decisions holding that deportability based on a conviction must be established by the conviction record and not by extrinsic evidence such as the alien's testimony." While an immigrant's testimony may be relevant in some circumstances, Fequiere v. Ashcroft, 279 F.3d 1325 (11th Cir. 2002), the parties to this appeal agree we should focus solely upon the record of conviction.

entered in the record. Near the top of the form appear two identical signatures. Both the first and the last names of the signature appear to begin with the letter "A," and the remainder of each signature is consistent with the name Albert Adefemi. One of the signatures indicates the waiver of a jury trial and appears above a line stating that "On Arraignment, The Defendant Pleads NOT GUILTY." The other signature is entered in a section titled "Plea of Guilty and Waiver." The form provides no means of discerning Adefemi's actual plea in this case: there is no indication that he amended an initial plea of not guilty to one of guilty, nor has anything been written in a space provided for stating the charge to which Adefemi, if he did enter a guilty plea, in fact admitted. Consistent with this ambiguity, none of three boxes printed next to each of three possible pleas – guilty, not guilty, and "nolo cont'd" – have been checked in a separate section of the form.

Below the sections bearing Adefemi's signatures is another section titled "Disposition and Sentence," in which the word "Probation" has been rubber-stamped. Still lower, in a separate section, the number "330.00" has been written on a space for designating a "fine." The next line appears to state that a term of confinement shall be served should payment be defaulted. However, the portion of the form titled "Disposition and Sentence" has been left entirely blank apart from the "Probation" stamp and a second stamp that reads "State Case." Significantly,

13

nothing has been written in spaces specifically reserved for identifying the

"Sentence: Amount Fine/Forfeiture $" and the number of "Days (Months)

probated." The failure of the Atlanta City Court to complete these sections makes

it difficult to interpret the meaning of the "Probation" stamp, since the imposition

of a probationary sentence would seem to require that a term of probation be set.[6]

In the absence of additional evidence by which the INS might have clarified

the meaning of the form, we do not think this document could allow a reasonable

fact finder to conclude that the INS had shown any conviction by clear and

convincing evidence. Our conclusion rests on the highly tenuous nature of any

inferences drawn from what is in essence nothing more than the front and back of a

traffic ticket, with a great many blanks left unfilled.[7] While the document does

---

[6]Although not necessarily relevant to what Adefemi pled, the document contains other ambiguities as well. Several handwritten marks have been made in a blank space preceded by the words "confined for a term of" and followed by two words within parentheses, one of which has been crossed out to leave the word "months." The IJ inferred that a sentence of 12 months would be imposed if Adefemi failed to pay a fine but acknowledged that the handwriting was very difficult to decipher. The crossed-out word is not clearly discernible, though it might represent the word "days." Nothing has been written in an additional blank space left for specifying the place of confinement. By the same token, no ready explanation appears for the fact that a fine has been indicated, not on the appropriate line in the "Disposition and Sentence" section, but only in a separate section under an indiscernible heading beginning with the words "Upon Trial, the Defendant." Unlike the "Disposition and Sentence" section of the form, no reference is made in this section to any adjudication of "guilt" or imposition of "sentence."
[7]We do not hold that such a document may never be sufficient evidence of a conviction in deportation proceedings, only that the document at issue here, in its present form, and without any additional explanation, is insufficient. The INS might have established the conviction by a wide range of alternative means. The applicable provision of federal immigration law states that a conviction may be proved by official records of judgments, by docket entries from court records, by minutes of court proceedings, and by records of penal institutions. 8 U.S.C. § 1229a(c)(3). Alternatively, the document at issue could have been explained by submitting

14

indicate a fine of $330, it fails to specify the basis for this penalty. Nowhere does it explicitly indicate the fact of conviction, the offense for which any conviction was entered, or any specific charge to which Adefemi may have pled guilty.

Even were we to assume that the clerical stamp reading "Probation" and the reference to a fine are evidence of some kind of conviction, we do not think it can be said that they are clear and convincing evidence of conviction of a firearms offense. The fact that the front side of the document lists such an offense does not mean Adefemi pled to or was convicted of that offense, since he may well have pled guilty to another, lesser offense. The reverse side simply fails to offer any clear guidance as to what this offense may have been.

In sum, we think the "clear and convincing" evidentiary standard applicable in deportation proceedings requires something more than this ambiguous ticket before an individual may be "compelled by our Government to forsake all the bonds formed here and go to a foreign land where he often has no contemporary identification." Woodby, 385 U.S. at 285. We also think a reasonable factfinder would have to conclude that the INS has not shown by clear and convincing evidence that Adefemi was convicted of a firearms offense. Accordingly, we reverse the decision of the BIA and remand for further proceedings consistent with

---

affidavits or testimony from court officials describing the court's record-keeping practices and explaining the meaning of the form at issue here.

15

this opinion.


REVERSED AND REMANDED.

KRAVITCH, Circuit Judge, concurring in part and dissenting in part:

I concur in Part I of the majority opinion.

I dissent from Part II because, in my view, the majority exceeds the established scope of review when it reverses the BIA's factual determination that Adefemi was convicted of a firearms offense. The majority opinion correctly indicates that we review the BIA's factual determinations under the substantial evidence test, see Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001), and that we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. at 1283–84 (quoting Lorisme v. INS, 129 F.3d 1441, 1444–45 (11th Cir. 1997)). The majority is also correct that the INS was required to prove Adefemi's conviction by clear and convincing evidence. The majority, however, fails to recognize the limits on the scope of our review of BIA factual findings. This court has held that the substantial evidence test is deferential and that "we may not 're-weigh the evidence' from scratch." Mazariegos v. INS, 241 F.3d 1320, 1323 (11th Cir. 2001); see also Najjar, 257 F.3d at 1278 ("Courts of appeal sit as reviewing bodies to engage in highly deferential review of BIA and IJ determinations. . . . Commensurate with this role, we cannot engage in fact-finding on appeal, nor may we weigh evidence that was not previously considered below.").

17

The majority does exactly what is forbidden by <u>Mazariegos</u> because it re-weighs "the evidence from scratch" and engages in a de novo review of the evidence presented by the INS. Thus, the majority, while not acknowledging that it does so, *effectively* creates a new standard of review, which essentially asks whether the record compels us to conclude that the INS *did meet* its burden. But, the real question we must answer is the exact opposite–whether the record compels us to conclude that the INS *did not* meet its burden. As explained below, the record is not so compelling.[1]

Our precedent is clear that in order "[t]o reverse a factual finding by the BIA, this Court must find not only that the evidence supports a contrary conclusion, but that it *compels* one." <u>Farquharson v. INS</u>, 246 F.3d 1317, 1320 (11th Cir. 2001) (emphasis added); <u>see</u> <u>also</u> 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ."); <u>Kenyeres v. Ashcroft</u>, 123 S. Ct. 1386, 1388 (2003) ("A reviewing court must uphold an administrative determination in an immigration case unless the evidence compels a conclusion to

---

[1] The majority claims that "[t]he dissent fails to recognize the necessity of integrating our deferential appellate review with the INS's demanding burden of showing deportability by clear and convincing evidence." I do, however, recognize that the INS was required to prove its case by clear and convincing evidence, but disagree that the record is so sparse that there is no reasonable evidence that the government met its burden. More importantly, I disagree with the manner in which the majority reviews the evidence presented by the INS.

18

the contrary."); Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) ("To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it."); Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002) ("To conclude that the Board should be reversed, a reviewing Court must find that the record 'not only supports that conclusion, but compels it.'") (quoting INS v. Elias-Zacarias, 502 U.S. 478, 480 n.1 (1992)).  Although the majority quotes this standard, it fails to apply the standard, as it reverses the BIA's factual finding by stating that "the document [from the City Court of Atlanta] at issue here, in its present form, and without any additional explanation, is insufficient" to "allow a reasonable fact finder to conclude that the INS [has] shown any conviction by clear and convincing evidence."  I disagree.

After reviewing the evidence anew and raising arguments not before the BIA,[2] the majority opinion reverses the BIA's finding that Adefemi was convicted of a firearms offense, concluding that the BIA did not base its finding on clear and

---

[2] The majority opinion discusses the possibility that Adefemi may have pleaded guilty to another, lesser offense.  Although this is a possible interpretation of the evidence, Adefemi did not raise this argument before this court or the BIA.  Such speculation by the majority shows that it is not applying a deferential standard of review, but is, in fact, looking at the evidence on a clean slate.  Similarly, the majority argues that the INS should have explained the Atlanta City Court document more thoroughly by submitting affidavits or testimony from court officials.  Under the substantial evidence test, it is not this court's place to tell the INS how to prove its case; rather, we are confined to reviewing the evidence that was presented to determine if there was substantial evidence to support the BIA's decision.  See Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001).

19

convincing evidence.[3]  In contrast, I would affirm the BIA's

[3]  The majority cites Sandoval v. INS, 240 F.3d 577 (7th Cir. 2001), Cortez-Acosta v. INS, 234 F.3d 476 (9th Cir. 2001), and Murphy v. INS, 54 F.3d 605, 610–12 (9th Cir. 1995), as decisions supporting its application of the substantial evidence test and, therefore, as support for its conclusion that the City Court of Atlanta document was not clear and convincing evidence that Adefemi was convicted of a firearms offense.  These decisions, however, are distinguishable.

In Sandoval, an Illinois state court had convicted Sandoval of possession of more than thirty grams of marijuana, but state law allowed Sandoval to collaterally attack his conviction. Sandoval, 240 F.3d at 578.  The Illinois state court modified the conviction and sentenced Sandoval to twenty-four months of first offender probation, a sentence that was only permissible if the state court vacated the original conviction and entered a new conviction for possession of not more than thirty grams of marijuana.  Id. at 580.  The state court, however, did not expressly vacate the original conviction.  Id.  Thus, the effect of the sentence modification was uncertain. Id.  The INS instituted deportation proceedings and the BIA concluded that Sandoval was deportable; Sandoval appealed.  Id. at 579-80.  As a matter of law, the Seventh Circuit determined that the INS could meet its burden in the BIA by showing either "1) that the Illinois judge exceeded his authority under state law, thus rendering the [sentence] modification ineffective, or 2) that the sentence modification was legal but not effective for purposes of federal immigration law."  Id. at 581.  Thus, the issues in Sandoval were questions of law.  The Seventh Circuit determined that the INS's arguments regarding these legal issues were incorrect. Because there was no evidence regarding whether Sandoval was found guilty of possession of more than thirty grams of marijuana, or less than thirty grams of marijuana, the Seventh Circuit determined that "the INS did not prove by clear and convincing evidence that Sandoval was convicted of possession of more than thirty grams of marijuana," and reversed.  Id. at 581-83. By contrast, in this case, there was only one state court proceeding.  As stated on the front of the City Court of Atlanta document, that proceeding was for a firearms offense.  No other offense was listed.  Thus, there is evidence that Adefemi was found guilty of a deportable offense.  The BIA determined that this was clear and convincing evidence, and the record does not compel a contrary conclusion.

In Cortez-Acosta, the issue was whether the alien previously had admitted encouraging, inducing, assisting, abetting, or aiding another alien to enter the United States illegally. Cortez-Acosta, 234 F.3d at 479-80.  In that case, the alleged admission occurred during a hearing before an immigration judge, but there was no transcript of the hearing, and, thus, the only evidence that Cortez-Acosta actually admitted to such a crime was the notes of the hearing taken by the immigration judge.  Id. at 478.  "Without a record of the master hearing, [the Ninth Circuit] had no way to verify that the IJ actually asked Mr. Cortez-Acosta the questions he supposedly answered, that the questions were phrased clearly enough to be understood by someone relying on a translation, and that Mr. Cortez-Acosta's answers were responsive to the questions asked.  In short, we have no way to confirm the IJ's findings or to review his decision for factual or legal error."  Id. at 482.  In our case, by contrast, there is a record of the proceedings in the immigration court and, therefore, we can review that court's decision. Moreover, the Ninth Circuit in Cortez-Acosta determined that, under the circumstances of that case, the deference due under the substantial evidence standard was not appropriate because such deference is only due "when the judge acts in the context of the adjudicatory process and his

20

factual finding because it was based on substantial evidence and because the record does not compel a contrary conclusion.

First, the BIA based its finding on "'reasonable, substantial, and probative evidence on the record considered as a whole.'" Najjar, 257 F.3d at 1283–84 (quoting Lorisme, 129 F.3d at 1444–45). The INS presented an authenticated document from the City Court of Atlanta to establish Adefemi's firearms conviction.[4] The document indicated that Adefemi was charged only with carrying a concealed firearm. No other offense is mentioned in the section of the document

---

findings are effectively reviewable on appeal. When [as in Cortez-Acosta] the IJ acts outside this process, we treat his findings as the observations of an ordinary witness. . . . as evidence, rather than as findings of fact." Id. at 482-83. Here, there is a record of Adefemi's proceedings in the immigration court and, consequently, there was an adjudicatory proceeding in that court. Therefore, deference to that court's findings is required.

In Murphy, the Ninth Circuit concluded that the INS did not prove the petitioner's alienage by clear and convincing evidence. Murphy, 54 F.3d at 612. The INS attempted to demonstrate that the petitioner was not born in the United States Virgin Islands by showing the lack of any birth certificate, by introducing an unauthenticated INS form, and by introducing uncorroborated double hearsay statements. Addressing the INS form, the court stated that "the unauthenticated [form] merits little (if any) weight, as acknowledged by the BIA. Murphy disputed the significant information [listed on the form], such as place of birth, [and] names of parents . . . . Murphy also provided information regarding the source of the information recorded on the form, an INS informant who apparently had some ulterior motive to make statements against Murphy." Id. at 610. The Murphy court concluded that the unauthenticated form and the lack of any other reliable evidence was insufficient to establish the petitioner's alienage. Here, the City Court of Atlanta document is an official court document, not an unauthenticated form of a government agency. Furthermore, Adefemi has never contested the validity of the information contained in the document.

[4] The majority opinion labels the document a "traffic ticket" and argues that the INS could have established the firearms conviction through "a wide range of alternative means." Regardless of what type of document it is, Adefemi has never argued, and the majority opinion does not contend, that the City Court of Atlanta document is not authentic or that it does not fall within 8 U.S.C. § 1229a(c)(3)(B)'s list of documents that can be used to establish a conviction.

entitled "Offense," or anywhere else on the document. The reverse side of the document shows that Adefemi was fined $330 and given a probated sentence. Although this document may support various conclusions about the final disposition of Adefemi's case before the City Court of Atlanta, it is, nonetheless, reasonable and probative evidence supporting the BIA's conclusion that Adefemi was convicted of a firearms offense, and, therefore, we must affirm. See id.

Second, the evidence in the record does not *compel* a conclusion contrary to the BIA's factual finding, regardless of whether the evidence may *support* such a conclusion. See Farquharson, 246 F.3d at 1320. No record evidence directly contradicts the BIA's finding that Adefemi was convicted of a firearms offense. Furthermore, the majority admits that its analysis of the document establishes no more than that the document is "ambiguous." Under our deferential standard of review, we may not reverse a factual finding of the BIA simply because we find the evidence to be ambiguous; we may only reverse a factual finding if the evidence compels a contrary conclusion. See id. Thus, because the evidence does not compel a conclusion contrary to the BIA's finding, which is the standard for reversal under our precedent, this court cannot reverse the BIA's factual determination.

Respectfully, therefore, I dissent from Part II of the majority opinion, as I

would affirm the BIA's factual determination that Adefemi was convicted of a

firearms offense.[5]

---

[5]  I would also reach the remaining issues raised by Adefemi on appeal and affirm the BIA's determination that he is deportable and ineligible for discretionary relief under § 212(c).